## COMMONWEALTH vs. RICHARD FIORE.

Hampden. May 21, 1979. — April 24, 1980.

Present: GOODMAN, ROSE, & GREANEY, JJ.

*Search and Seizure. Constitutional Law*, Search and seizure. *Practice, Criminal*, Examination of jurors, Directed verdict. *Evidence*, Expert opinion.

At a hearing ·on a defendant's motion to suppress a quantity of drugs found in a cottage, there was sufficient evidence to warrant findings that a warrantless entry·of the cottage was justified because it had obviously been broken into and that the discovery of hashish therein was inadvertent even though the police had received information from an informant that there might be narcotics in the cottage. [619-622]

At a criminal trial, the judge did not abuse his discretion in refusing to ask prospective jurors certain questions proposed by defense counsel which dealt with such general topics as a defendant's right not to testify and the presumption of innocence. [622-623]

At the trial of a defendant charged with possession of controlled substances with intent to distribute resulting from the discovery of a quantity of drugs in a cottage, evidence that the defendant had in his possession the keys to locks on the door of the cellar of the cottage, in which three trunks of marihuana had been found, that the defendant had in his home books of account with reference to sales of marihuana, and that in the cottage were a number of papers and bills addressed to the defendant at his home address was sufficient to warrant a finding that the defendant had dominion and control over the narcotics seized from the cottage. [623-624]

At the trial of a defendant charged with possession of controlled substances with intent to distribute, the judge did not err in permitting a State police officer to testify as to the street value of cocaine and hashish over which the defendant allegedly had dominion and control. [624]

INDICTMENTS found and returned in the Superior Court on January 12, 1978.

The cases were tried before *Moriarty*, J.

*Willie J. Davis* for the defendant.

*John T. McDonough,* Assistant District Attorney, for the Commonwealth.

GOODMAN, J. The defendant appeals (G. L. c. 278, §§ 33A-33G) from convictions on six indictments charging possession of controlled substances with intent to distribute. He assigns as error and argues in the following order (1) the denial of his motion to suppress evidence which, he contends, resulted from an illegal search and seizure; (2) the trial judge's refusal to ask certain questions of prospective jurors; (3) the denial of his motions for directed verdicts; and (4) the admission of certain testimony at trial. (Other assignments of error, not argued, are deemed waived.)

1. *Motion to suppress.* The following background facts appear primarily from the judge's findings on the motion to suppress, supplemented by the evidence introduced at the hearing on the motion. About 10:00 P.M., on December 23, 1977, an officer of the East Longmeadow police department (Getty) spoke over the telephone to a State police trooper (Cauley) and told him that he (Getty) had received information "from an informant that there was a possibility of narcotics, guns and a house break at a location near a trailer park, a junk yard and a power line that he thought to be either in the Palmer or Brimfield area."[1] Later that evening, Cauley, together with members of the State police and the chief of the Brimfield police department, proceeded " to a vicinity near a power line, near a junk yard" in the town of Brimfield (see note 1, *supra*).[2] There they came upon a cottage, the outside door of which was torn off. Cauley entered through the doorway and found the inner door to be ajar. He looked to see if anyone was inside but found no one. In the cottage, Cauley noticed a hole in the floor and shone his flashlight into the hole, where he saw and smelled a quantity of hashish. The next day he applied for and received a warrant to search the Brimfield cottage;

---

[1] The quotation, included in the judge's findings, is taken from Cauley's testimony at the hearing.

[2] There was also a trailer park in the area.

the police seized cocaine and a large quantity of hashish, various bills, notebooks, papers and miscellaneous paraphernalia. As a result, Cauley then obtained a warrant to search the defendant's East Longmeadow residence; that search resulted in the seizure of more narcotics, as well as keys to the locks on the cellar door of the cottage.[3]

The defendant contends that Cauley's observation of the hashish in the Brimfield cottage is the fruit of an illegal entry, and that this is manifest (a) on the face of the affidavit in support of the search warrant *(Commonwealth* v. *Monosson,* 351 Mass. 327 [1966]) and (b) from the evidence at the hearing on the motion to suppress. We do not agree.

(a) Cauley's affidavit recites that, as a result of information from Getty concerning a breaking and entering in a dwelling house in Brimfield, Cauley and other officers went to that dwelling house and found that "there had been in fact a break committed there." They "entered the dwelling house . . . to ascertain who the owner was." The affidavit further sets out that while in the cottage Cauley noticed "a quantity of . . . hashish."

It seems clear to us that a house break without more — as set out in the affidavit — raises the possibility of danger to an occupant and of the continued presence of an intruder and indicates the need to secure the premises. In such circumstances "[t]he right of the police to enter and investigate in an emergency without the accompanying intent to either search or arrest is inherent in the very nature of their duties as peace officers." *United States* v. *Barone,* 330 F. 2d 543, 545 (2d Cir.), cert. denied, 377 U.S. 1004 (1964). *Warden, Md. Penitentiary* v. *Hayden,* 387 U.S. 294, 298-300 (1967). *Michigan* v. *Tyler,* 436 U.S. 499, 509-510 (1978). *Commonwealth* v. *Thomas,* 358 Mass. 771, 774 n.2 (1971). *Commonwealth* v. *Kingsbury,* 7 Mass. App. Ct. 51, 53, *S.C.,* 378 Mass. 751 (1979). See *Marshall* v. *United States,* 422 F.2d 185, 187-189 (5th Cir. 1970); *United States* v. *Duna-*

---

[3] No separate issue is raised with reference to the East Longmeadow warrant.

*van,* 485 F.2d 201, 204-205 (6th Cir. 1973). The defendant points out, however, that the entrance in this case was stated in the affidavit to be in order "to ascertain who the owner was." We do not read the affidavit so restrictively as to exclude the normal motivations in entering a dwelling when the police discover a break. *United States* v. *Ventresca,* 380 U.S. 102, 108 (1965).[4]

(b) The defendant further contends that Cauley's observation of the hashish in the cottage was the fruit of an illegal entry made for the purpose of looking for narcotics, rather than the inadvertent result of the investigation of a breaking and entering. See *Commonwealth* v. *Forde,* 367 Mass. 798, 807-808 (1975), citing *Wong Sun* v. *United States,* 371 U.S. 471, 484-488 (1963), *Commonwealth* v. *Penta,* 361 Mass. 894, 895 (1972), and *Commonwealth* v. *Hall,* 36[6] Mass. 790, 795 (1975). The issue, otherwise put, is the applicability to Cauley's observation of "[t]he plain view doctrine [which] requires prior police justification for an intrusion in the course of which an officer inadvertently comes across incriminating evidence. The 'prior justification' language is merely another way of articulating the necessity for 'some . . . legitimate reason for being present unconnected with a search directed against [an] accused.' *Coolidge* v. *New Hampshire* [403 U.S. 443, 466 (1971)]." *Commonwealth* v. *Walker,* 370 Mass. 548, 557 (1976).

On the record in this case we believe the entry was justified. To be sure, Cauley testified that he came upon the cottage in the course of an investigation of the possibility of narcotics in a house which might have been broken into and that Getty's information, on which he proceeded, came from an informant for whose reliability neither Cauley nor

---

[4] The defendant also complains that Cauley omitted from his affidavit any reference to the additional information received from Getty about the possibility that narcotics might be found in the cottage. But in our view, as explained in part (b) *infra,* this possibility did not make unlawful the entry into the cottage; therefore its inclusion in the affidavit would have been immaterial. See *Franks* v. *Delaware,* 438 U.S. 154, 161-164 (1978); *Commonwealth* v. *Reynolds,* 374 Mass. 142, 147-149 (1977).

Getty could vouch.[5] In view of the uncertainty of the information, the trial judge could, as he did, believe Cauley's testimony that when he came upon the cottage from which the door had been torn, he did not know that this was the cottage to which Getty's informant had referred. From the testimony, Cauley had no physical description of or any other information as to the specific cottage involved; there are "numerous cottages in the area." Cauley was obviously looking for the cottage which he ultimately entered, but it was just happenstance that he went in the direction of that cottage.[6] Further, there were tracks in the snow leading to the cottage, and there was an automobile parked in the yard.

In the circumstances the possibility that this was the cottage where narcotics might be found did not cancel out the alternate possibility that someone in the cottage was in need of help or that an intruder was in the dwelling. Cauley was not obliged to treat the cottage as somehow an outlaw without the right to police protection and aid because of the possibility that there might be narcotics in it. That mere possibility did not require him to depart from the normal procedure that "if we came upon a break we go in and ascertain if anybody who had broken in was still inside." Accordingly, the motion to suppress was properly denied.

2. *Voir dire of prospective jurors.* Of the seventeen questions which defense counsel proposed that the trial judge ask

---

[5] Cauley testified that on questioning Getty he was told that Getty had never used this informant before and that when Cauley "asked him what did he base his reliability on . . . he told me that the informant was very scared and he tended to believe him." Getty would not tell Cauley where the informant got the information.

[6] He testified: "I went through a trailer park where there was numerous places. There were some up behind it and I went up a dirt road. I b[ore] to the right. You could have b[orne] to the left and I think the[re] are cottages up in there. I came upon a cottage." He further testified: "I came upon a dwelling that was obviously broken into. I did not know . . . if it was the same place that Mr. Getty had talked to me about . . . . I went in to ascertain if anybody was inside there who had broken in, to secure the property for the owner and to identify the owner, if at all possible."

prospective jurors, the judge asked six. In view of the representations of counsel that there had been "a lot of publicity" when the case began a little less than a year previously, the judge agreed to ask defense counsel's proposed question addressed to the possible exposure of the venire to such publicity.[7] He thus complied with G.L. c. 234, § 28, as amended through St. 1975, c. 335, which requires the examination of prospective jurors "if it appears that as a result of the . . . possible exposure to potentially prejudicial material . . . the juror may not stand indifferent." We see no reason to interfere with the judgment of the trial judge in refusing to ask additional questions dealing with such general topics as a defendant's right not to testify and the presumption of innocence. The trial judge apparently saw no sufficient relation between whatever "extraneous considerations" the publicity might have engendered and those questions, which arise at every trial and which are, as the trial judge indicated, dealt with in the charge to the jury. The trial judge necessarily has a large measure of discretion  to decide just how to frame the questions in applying the statute. See *Commonwealth* v. *Campbell,* 378 Mass. 680, 695 (1979); *Commonwealth* v. *Jones, ante* 103, 114-116, further appellate review granted, 380 Mass. 939 (1980).

3. *Motions for directed verdict.* Contrary to the defendant's contention, there was sufficient evidence when the defendant moved for a directed verdict at the end of the Commonwealth's case from which the jury could find beyond a reasonable doubt that the defendant had dominion and control over the narcotics seized in the Brimfield cottage. Three trunks of marihuana were found in the cellar, the windows

---

[7] The proposed question was: "Do you have any knowledge of this case gained from any source including but not limited to radio, television, newspapers or in conversation with other prospective jurors?

a. If so, have you formed an opinion about the case?

b. If you have not formed an opinion but have knowledge of the case, can you decide the issues solely on the evidence presented at trial?"

He also asked as proposed by defense counsel: "Do you have any special feelings about narcotics which will make it difficult for you to decide this case upon the evidence alone?"

of which were welded shut with metal plate and the heavy door to which was secured by two dead-bolt Yale locks. The keys to these locks were in the possession of the defendant when the police went to his East Longmeadow home. Further, in his bedroom in East Longmeadow they found books of account with reference to sales of marihuana and under his bed three jars, the numbers on which correlated with numbers in notebooks found in the Brimfield cottage. The search of the Brimfield cottage also yielded a number of papers and bills addressed to "Mr. Richard Fiore, 26 Smith Avenue, East Longmeadow," where Richard Fiore lived and a number addressed to Richard Fiore with directions to the Brimfield cottage. We need not analyze each piece of evidence; together, we are convinced, they presented a jury question as to the control and possession of the narcotics in the Brimfield cottage. See *Commonwealth* v. *Dinnall,* 366 Mass. 165, 169 (1974); *Commonwealth* v. *Rugaber,* 369 Mass. 765, 769-770 (1976); *Commonwealth* v. *Xiarhos,* 2 Mass. App. Ct. 225, 231-232 (1974); *Commonwealth* v. *Lee,* 2 Mass. App. Ct. 700, 702-705 (1974).

4. *Admission of evidence.* Cauley's expert testimony as to the "street value" of cocaine and hashish was admissible. The trial judge was well within his discretion in qualifying Cauley as an expert *(Commonwealth* v. *Boyd,* 367 Mass. 169, 182 [1975]) and the testimony was obviously relevant to the defendant's intent to distribute. See *Commonwealth* v. *Baltrop,* 2 Mass. App. Ct. 819, 820 (1974); *Commonwealth* v. *Rivera,* 6 Mass. App. Ct. 947 (1978). See also cases cited in *Opinion of the Justices,* 378 Mass. 822, 828 n.4 (1979). We find unconvincing the defendant's argument in his brief based on points made on cross-examination going to the weight of the testimony. His further objection to the evidence of the correlation between the numbers on the jars found in the defendant's East Longmeadow home and the notations in notebooks in the Brimfield cottage is insubstantial.

*Judgments affirmed.*