THE STATE OF WASHINGTON, *Respondent,* v. LISA L. DRESKER, ET AL, *Appellants.*

*Harry E. Ries* and *Ries & Kenison,* for appellants.

*Paul A. Klasen, Jr., Prosecuting Attorney,* and *Mary Ann Brady, Deputy,* for respondent.

THOMPSON, J.—Richard Lindquist and Lisa Dresker Lindquist were convicted under the Uniform Controlled Substances Act, RCW 69.50, of manufacturing a controlled substance. On appeal they contend the trial court erred in refusing to suppress evidence seized at their residence. We reverse.

This case arose out of a prenuptial wedding reception held in honor of the Lindquists' forthcoming June wedding. Sergeant Cleve Schuchman of the Grant County sheriff's office received a radio message that a large party was taking place at the Lindquist mobile home located approximately a mile outside the city of Quincy. Sergeant Schuchman arrived at the Lindquist residence about 9:30 p.m. the evening of May 22, 1982, and observed 40 to 50 vehicles parked in the area. He testified he associated some of the vehicles with minors. The party was loud and he saw people wandering about the premises with beer bottles and drinking cups in their hands.

Sergeant Schuchman returned to the Quincy Police Department and organized six additional police officers for the purpose of conducting a raid. As Sergeant Schuchman testified at the suppression hearing, "I felt at that point we had probable cause to go into the residence to check to see if in fact they were drinking". In organizing the raid, the officers, anticipating that their arrival would precipitate the rapid departure of some partygoers, developed a plan of containment whereby some deputies were directed to go directly into the Lindquist residence and others were to go directly to the garage area. Sergeant Schuchman elected to remain on the road near the residence.

The seven police officers arrived at the residence and proceeded directly to their assigned tasks. Deputy Schultz stated that as he approached the front door of the mobile home he could see through the front window what appeared to be minors in the residence with beer bottles and paper cups in their hands. At or near the front door, Deputy Schultz testified he met Richard Lindquist and the deputy stated, "let's step inside the residence." Mr. Lindquist

made no reply and the deputy continued on into the home.

After entering the mobile home, the deputies segregated the people, directing the adults to remain in the mobile home and directing persons under 21 out into the garage. Some of the deputies then proceeded to write citations to the adults remaining in the dining room area while other deputies wandered about the home looking in rooms and closets for additional suspects. Some 15 to 30 minutes after their arrival, Deputy Schultz noticed a tray on top of a buffet in the dining room area. The tray contained marijuana seeds and marijuana remnants. The discovery prompted Deputy Schultz to ask Mr. Lindquist for permission to search the residence and, upon being told no, some of the deputies returned to town for a search warrant while others remained to secure the residence. A search warrant was obtained and served upon the Lindquists and a subsequent search and seizure produced additional contraband and drug paraphernalia, most of which was entered into evidence during trial. After a 2–day hearing on defendants' motion to suppress during which witnesses testified for both the prosecution and the defendants, the trial court denied the motion.

The dispositive issue is whether the deputy's warrantless entry of the Lindquist residence was lawful. If the entry was lawful and the officers were in a place they had a right to be, *State v. Chrisman,* 100 Wn.2d 814, 676 P.2d 419 (1984), then presumably that which they saw in plain view would support the subsequent issuance of the search warrant.[1] The police officers had neither an arrest nor search warrant when they arrived at the Lindquist residence. In the absence of consent or exigent circumstances, an arrest warrant is required to enter a suspect's home to make a criminal arrest. *State v. Counts,* 99 Wn.2d 54, 58,

---

[1]We have not addressed the propriety of the issuance of the search warrant based on Deputy Schultz' affidavit nor the scope and intensity of the subsequent search since no such issues have been raised on appeal. Our silence should not be interpreted as either approval or disapproval of the procedures.

659 P.2d 1087 (1983) (adopting *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980)); *State v. Teuber,* 19 Wn. App. 651, 577 P.2d 147 (1978) (misdemeanor arrest). The force of this rule is underlined in the *Payton* decision. That Court held the Fourth Amendment

> protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their . . . houses . . . shall not be violated." . . . the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Payton,* 445 U.S. at 589–90. The pronouncement is clear.

The State has the burden of establishing that consent was in fact freely and voluntarily given. *State v. Counts, supra* at 64. The deputies formulated a plan while still at the Quincy police station whereby the residence would be entered in order to minimize the anticipated rapid departure of partygoers that would be precipitated by the arrival of the police. Deputy Schultz was on his way into the Lindquist residence when by happenstance he ran into Mr. Lindquist. In light of the deputies' previously planned destination, it is obvious his statement to Mr. Lindquist, "let's step inside", was not a request for permission to enter. To the contrary, it was a command to Mr. Lindquist to go back into the residence. Mr. Lindquist's silence and compliance with the command was not consent; consent was neither sought nor given.

In *Counts,* at 60, the court noted five circumstances which could be termed exigent: (1) hot pursuit; (2) fleeing suspect; (3) danger to arresting officer or to the public; (4) mobility of the vehicle; and (5) mobility or destruction of the evidence. The trial court determined the State established exigent circumstances warranting entry into the residence in order to prevent mass dispersal. We disagree. While the findings of the trial court following a

suppression hearing are of great significance to a reviewing court, the constitutional rights at issue require us to make an independent evaluation of the evidence. *State v. Daugherty*, 94 Wn.2d 263, 269, 616 P.2d 649 (1980), *cert. denied*, 450 U.S. 958 (1981); *State v. Agee*, 89 Wn.2d 416, 419, 573 P.2d 355 (1977). The mere possibility of escape is not sufficient under the fleeing suspect exigency. *State v. Coyle*, 95 Wn.2d 1, 9, 621 P.2d 1256 (1980). Additional relevant factors should be considered, including (1) the gravity of the offense committed; (2) the belief that the suspect is armed; and (3) the likelihood that the suspect would escape in the absence of swift police action. *United States v. Williams*, 612 F.2d 735, 739 (3d Cir. 1979), *cert. denied*, 445 U.S. 934 (1980). Here, the originally contemplated offenses were relatively minor liquor violations with no indication weapons would be present. The record does not support exigent circumstances sufficient to warrant entry of the Lindquist home without a warrant.

██ RCW 10.31.100 provides in pertinent part:

A police officer having probable cause to believe that a person has committed or is committing a felony shall have the authority to arrest the person without a warrant. A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer . . .

The State contends arrest warrants were not needed to enter the Lindquist residence since misdemeanors or gross misdemeanors were being committed in the presence of the officers. We disagree. The facts do not support the State's contention. Sergeant Schuchman, at the suppression hearing, indicated he had no more than a suspicion a misdemeanor was being committed. He stated, after initially observing the vehicles and suspects at the residence, "I felt at that point we had probable cause to go into the residence to check to see *if in fact they were drinking*". (Italics ours.) If minors were not drinking, no crime was being committed. Additionally, it should be noted that no one testified at the

suppression hearing who the suspect minors were or who owned the suspect cars. Without articulating specific facts pertaining to a specific person who is committing a misdemeanor, the officer has little more than a hunch or suspicion. Arrest based on suspicion or for purposes of investigation will not be condoned. *State v. Ellison,* 77 Wn.2d 874, 877, 467 P.2d 839 (1970).

We conclude the officers' entry into the Lindquist residence without an arrest or search warrant was unlawful. Since they were not in a place they had a right to be, all evidence seized as a result of their unlawful entry must be suppressed. As noted by the trial judge, the incidence of underage drinking is a source of grave concern for society and police action geared toward curtailing this activity is warranted; but sacrificing Fourth Amendment protections in favor of allowing unconstitutional investigatory raids is at best a poor trade off.

Defendants' motion to suppress should have been granted. Reversed.

McINTURFF, J., and FARIS, J. Pro Tem., concur.