[No. 7585-7-II. Division Two. April 1, 1986.]

THE STATE OF WASHINGTON, *Appellant,* v. KEVIN LEE BELL, *Respondent.*

*C. Danny Clem, Prosecuting Attorney,* and *Anthony C. Otto, Deputy,* for appellant.

*Roger A. Hunko* and *Wecker, Hunko & Holman,* for respondent.

WORSWICK, C.J.—The State appeals the suppression of marijuana plants and paraphernalia found in Kevin Bell's attic. The sole issue on appeal is whether police must procure a warrant before helping fire fighters remove contraband found in plain view during a lawful fire investigation. We hold they need not, and reverse.

On September 30, 1983, a fire broke out at the home of Kevin Bell. A deputy sheriff saw the blaze and summoned the fire department. When fire fighters entered the burning house, they found its only occupant, Kevin Bell, unsuccessfully attempting to douse the flames with a small hose. They managed to extinguish the fire, which had started in a wood stove in the kitchen, and two officers, including Captain William Dumbaugh, went up to the attic to make sure that the fire had not spread there. In the windowless attic, Captain Dumbaugh saw an elaborate plant–growing operation. Artificial lighting, irrigation and ventilation machines were supporting more than 80 plants, which appeared to be marijuana. Captain Dumbaugh immediately reported his discovery to his superior, Assistant Fire Marshal Glenn

Johnson, who ascended to the attic and positively identified the plants as marijuana. Johnson then called a deputy prosecuting attorney to ask how he should dispose of the plants. He also called a fire investigator, Dave Maulding, to the scene, and telephoned the sheriff's office, asking that an officer be present to observe the seizure. When Deputy Sheriff Clark arrived, he, together with Johnson and Maulding, organized the removal of the marijuana plants and equipment. The fire fighters loaded the stuff onto a truck, and drove to the sheriff's office. Bell later confessed to growing marijuana in his attic.

Bell was charged with possession of marijuana. RCW 69.50.401(d). However, at a pretrial suppression hearing, the court ordered the evidence obtained from the attic suppressed. Although it found that the fire fighters lawfully discovered the marijuana, it ruled their seizure improper because they could not show an exigency justifying their failure to obtain a warrant. Bell urges us to uphold this ruling on either federal or state constitutional grounds. We decline to do so.

The fundamental question is whether the fire fighters' discovery of the marijuana was the result of an unreasonable search. The Fourth Amendment, which prohibits unreasonable governmental searches and seizures, applies to fire fighters as well as to police. *See Michigan v. Tyler,* 436 U.S. 499, 56 L. Ed. 2d 486, 98 S. Ct. 1942 (1978). Warrantless searches and seizures are unreasonable per se, subject only to limited exceptions. *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). The State bears a heavy burden of proving that a warrantless search falls within one of these exceptions. *Arkansas v. Sanders,* 442 U.S. 753, 760, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979).

The State asserts that the fire fighters' seizure falls within the "plain view" exception to the warrant requirement. This exception permits government officials to seize clearly incriminating evidence or contraband without a warrant if the official (1) has a prior justification for the intrusion into the protected area; (2) discovers the incrimi-

nating evidence inadvertently; and (3) immediately recognizes that he has evidence before him. *See Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *State v. Chrisman,* 100 Wn.2d 814, 676 P.2d 419 (1984).

We agree with the State that the plain view exception applies in this case. First, the fire fighters had a prior justification for their intrusion into Bell's attic. The fire created an exigency that justified their warrantless entry into his house. *See Michigan v. Clifford,* 464 U.S. 287, 78 L. Ed. 2d 477, 104 S. Ct. 641 (1984). Once the fire was out, they had a right to search the house to discover the cause of the fire, and to ensure that it would not rekindle. *Clifford,* at 293. Therefore, the exigency created by the fire justified the warrantless entry into the attic.

Next, Bell concedes that the discovery of the marijuana operation was completely inadvertent. Dumbaugh went to the attic looking only for evidence that the fire had spread; he could not help seeing the plants there.

Finally, there is no question that Dumbaugh immediately recognized the setup as an illegal drug operation. He testified that he suspected at once that the plants were marijuana; in light of their location and elaborate support system, he could not avoid realizing that they were illegal drugs.

Bell argues that the third element of the plain view test was not met because Johnson called the prosecutor to ask for advice before removing the plants. We disagree. The exception requires only immediate recognition that the discovered objects are evidence or contraband; it does not require instantaneous seizure. In this case, Johnson called the prosecutor before seizing the stuff because he was not sure of the proper procedures for handling drugs, not because he did not know the plants were marijuana. The telephone call had nothing to do with whether the plants were in plain view.

In short, this is a straightforward plain view case in which all the elements of the plain view exception were

met. This should be the end of the case. However, inasmuch as the trial court was persuaded by three of Bell's further arguments, we believe it will be useful for us to discuss them.

 First, Bell contends that under article 1, section 7 of the state constitution, a plain view discovery does not justify a warrantless seizure without exigent circumstances. He relies on *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983). *Ringer* held, in relevant part, that police with probable cause to search an automobile must procure a warrant, absent exigent circumstances. *Ringer* does not hold that all warrantless searches and seizures are improper absent exigent circumstances. Since *Ringer,* the Supreme Court has at least twice applied the plain view exception in its Const. art. 1, § 7 analysis. *See State v. Myrick,* 102 Wn.2d 506, 688 P.2d 151 (1984); *State v. Chrisman, supra.* Neither case suggests that exigent circumstances are needed to justify a plain view seizure.[1]

 Bell argues next that Deputy Sheriff Clark had no right to enter his house without a warrant to assist in the seizure. We reject this argument. Once the fire fighters legally invaded his attic and discovered the marijuana plants, Bell lost any reasonable expectation of privacy to the extent of their invasion.[2] *See Steigler v. Anderson,* 496

---

[1]We recognize that dicta in *Myrick* may lead to confusion on this point. *See Myrick,* 102 Wn.2d at 514–15:

> plain view *alone* is never enough to justify the warrantless seizure of evidence. . . . Incontrovertible testimony of the senses that an incriminating object is on premises . . . establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

*Myrick* (quoting *Coolidge v. New Hampshire,* at 468). The *Myrick* court was referring to the fact that the seizing officer saw the contraband through a window, and entered a building to seize the goods. In other words, he had no prior justification for being in the building. Here, on the other hand, there was a prior justification for the officers' intrusion into the attic. Seizing the stuff did not require them to enter a protected area.

[2]Bell does not contend that the Fourth Amendment or Const. art. 1, § 7 pro-

F.2d 793 (3d Cir.), *cert. denied,* 419 U.S. 1002, 42 L. Ed. 2d 277, 95 S. Ct. 320 (1974); *United States v. Green,* 474 F.2d 1385 (5th Cir.), *cert. denied,* 414 U.S. 829, 38 L. Ed. 2d 63, 94 S. Ct. 55 (1973); *United States v. Schuster,* 684 F.2d 744 (11th Cir. 1982) (where defendant gave one government agent a key to his apartment and told him where to find counterfeit currency, a second government agent could accompany the first to the apartment and seize the currency, even though neither agent had procured a warrant), *cert. denied,* 465 U.S. 1010, 79 L. Ed. 2d 239, 104 S. Ct. 1008 (1984); *United States v. Brand,* 556 F.2d 1312 (5th Cir. 1977) (where officer legally entered house to aid drug overdose victim, other officers could legally enter even though the exigency justifying the initial entry no longer existed), *cert. denied,* 434 U.S. 1063, 55 L. Ed. 2d 763, 98 S. Ct. 1237 (1978); *United States v. Gargotto,* 476 F.2d 1009 (6th Cir. 1973) (fire investigator found papers in plain view and delivered them to federal agents; court held that evidence legally obtained by one police agency may be made available to other agencies without a warrant).

We find unpersuasive the sole decision involving a factual situation similar to that presented here. *United States v. Hoffman,* 607 F.2d 280 (9th Cir. 1979). In *Hoffman,* the court reversed a conviction based on evidence found in plain view by fire fighters but seized by police. The court held that police had no right to enter a private home without a warrant even after fire fighters lawfully entered and inadvertently discovered a sawed–off shotgun. The court implied that Hoffman retained an expectation of privacy vis–a–vis the police, even after his gun was discovered: "no citizen should reasonably expect that, because a fire has occurred in his home, and certain few officials may enter, any sort of public officer may thereafter invade his home

---

hibits fire fighters from seizing evidence unrelated to arson or other crimes that they are authorized to investigate. In our view, any government official who, being where he has a right to be, inadvertently stumbles across contraband may seize it and turn it in to the police without running afoul of the state or federal constitution.

for purposes unrelated to the initial intrusion." 607 F.2d at 285.[3]

We reject this analysis. It simply is not reasonable to expect freedom from a government intrusion into one's home when one lawful government intrusion has already taken place and has led to the discovery of evidence of a crime. Requiring a warrant in this case might delay the inevitable seizure, but would not add to Bell's privacy or sense of security—he does not question that the fire fighters would have the right to remain on the premises while a warrant was obtained. Had Deputy Sheriff Clark gone beyond the scope of the initial search, or had he seized evidence not discovered first by fire fighters, our opinion might be different. But in this case, Clark merely followed in the footsteps of the fire fighters, proceeded immediately to the attic, and, along with several fire fighters, helped carry the stuff out. He did nothing that the fire fighters did not do themselves.

Our analysis under the state constitution is no different. *State v. Myrick, supra,* announces that the "reasonable expectation of privacy" analysis, *see Katz v. United States, supra,* is not relevant under Const. art. 1, § 7. Rather, we must determine "whether the State unreasonably intruded into the defendant's 'private affairs.'" *Myrick,* 102 Wn.2d at 510. Because government officials had already lawfully entered the attic and discovered the marijuana operation, Clark's subsequent warrantless entry and participation in the seizure was a reasonable intrusion into Bell's private affairs.

Finally, Bell argues that public policy requires suppression in this case, because citizens will not call the fire department in emergencies if they believe that any contraband discovered can be seized without a warrant. This

---

[3]*Hoffman* is also distinguishable on its facts. The fire fighters found the shotgun but did not seize it. They told police officers who then entered and made the seizure. This was not, however, the basis for the opinion, and we prefer to deal directly with the rationale of the case.

argument assumes that such citizens would not hesitate to summon aid if police had to obtain a warrant, even though the issuance of the warrant would be a foregone conclusion. The truth is that people with something to hide will not willingly invite government officials into their homes under any circumstances. Therefore, our decision in this case offends no valid public policy.

Reversed.

PETRICH and ALEXANDER, JJ., concur.

Review granted by Supreme Court June 3, 1986.