[No. 15175–4–I.   Division One.   August 11, 1986.]

THE STATE OF WASHINGTON, *Appellant,* v. DANIEL J. BAKKE, *Respondent.*

*David S. McEachran, Prosecuting Attorney,* and *Warren Page* and *Randall J. Watts, Deputies,* for appellant.

*Michael John Tario* and *Herships & Tario,* for respondent.

SWANSON, J.—The State of Washington appeals the dismissal of its prosecution of Daniel J. Bakke for unlawfully manufacturing a controlled substance, *viz.,* marijuana, in violation of RCW 69.50.401. The State claims that the trial court erred in suppressing evidence seized during searches of Bakke's residence since the initial entry and search of Bakke's home was proper based upon the police officers' probable cause belief that the dwelling had been burglarized.

The trial court's findings of fact may be summarized as follows: At about 5:18 p.m. on February 26, 1984, the Bellingham Police Department received a call from Bakke's neighbor reporting a burglary in progress at Bakke's residence, located at 1515 J Street in Bellingham, Washington. The neighbor had seen two male juveniles running from the back door area of Bakke's house. When Officers Livesey and Wright arrived at the Bakke residence, they learned from neighbors the identity of the home's owner as well as the fact that he could not be contacted immediately; they were also told that the Bakke residence had been burglarized previously.

The police officer noticed that the exterior rear door's glass window was broken and that the break in the glass created an opening large enough to accommodate a juvenile's small body. They noted fresh muddy footprints extending from the exterior rear door through an enclosed porch to an interior door that appeared to be broken from top to bottom at the jamb and was ajar; through the interior door they saw a light on inside the house.

The exterior rear door and all other windows and doors were secured. When the officers broke the remaining rear door window glass so that they could open the door from the inside, they discovered that the door was secured at the floor by a locked bolt. One of the officers then climbed through the door window and unlocked the door and both

officers entered the house.

The officers' expressed intent in entering the house was to locate any suspects and secure the safety of the house and its contents. Finding no suspects on the first floor, the officers proceeded upstairs, where in a bedroom walk–in closet they saw two marijuana plants and growing paraphernalia. They noticed in the upstairs hallway a ladder leaning against a wall under a trapdoor and a folding shovel on the floor; although the trapdoor was secured with a padlock, they observed through a gap a very strong light in the attic which was consistent with lights used to grow marijuana.

No suspects were found in the residence but the officers observed a dresser and a nightstand in the master bedroom with drawers which appeared to have been opened or gone through. Based upon their observations, the officers obtained a warrant to search the attic of Bakke's residence. Upon execution of the warrant, the officers seized from the attic one growing light and a number of marijuana plants. Based upon evidence obtained during the searches conducted at Bakke's home, he was charged with a violation of RCW 69.50.401 for unlawfully manufacturing a controlled substance.

The trial court dismissed the action after granting the defense motion to suppress evidence obtained during the two searches of Bakke's home because the issuance of the search warrant was based upon evidence that was obtained during the initial warrantless search, which search the court concluded was illegal under both the federal and state constitutions. This appeal followed.

The question presented is whether the initial warrantless entry into Bakke's home was justified under the state and federal constitutions as falling within the emergency exception to the warrant requirement where the police had probable cause to believe that a burglary had been or was being committed. The federal constitution's Fourth Amendment[1]

---

[1]The federal constitution's Fourth Amendment provides:

and article 1, section 7 of the Washington State Constitution[2] proscribe unreasonable searches. *Mincey v. Arizona,* 437 U.S. 385, 57 L. Ed. 2d 290, 98 S. Ct. 2408, 2412 (1978); *State v. Chrisman,* 100 Wn.2d 814, 818, 676 P.2d 419 (1984). The physical entry of the home is the chief evil against which the Fourth Amendment is directed, and a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed upon government agents who seek to enter a home for search or arrest purposes. *Welsh v. Wisconsin,* 466 U.S. 740, 80 L. Ed. 2d 732, 104 S. Ct. 2091, 2097 (1984). Under the Fourth Amendment and under our state constitution's article 1, section 7, warrantless searches and seizures inside a home are presumptively unreasonable, subject to a few carefully drawn exceptions which the State bears the burden of establishing. *Welsh v. Wisconsin, supra; State v. Chrisman, supra* at 818, 822.

Bakke contends that with narrowly drawn exceptions, federal and state cases mandate a warrant in order to search a person's home and that exigent circumstances justifying a warrantless search require a real danger either to police safety or the risk of lost evidence. Bakke further argues that even where such exigencies exist, a warrantless entry into a private home is unconstitutional absent probable cause to believe that suspects are actually present within the area to be searched.

However, the cases upon which Bakke relies—*Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980) (warrantless, nonconsensual entry into a suspect's home to make a routine felony arrest); *State v. Counts,* 99

---

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[2]Const. art. 1, § 7 states:
"No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

Wn.2d 54, 659 P.2d 1087 (1983) (warrantless entry into a private home to arrest suspect located within); *State v. Riggins,* 64 Wn.2d 881, 395 P.2d 85 (1964) (warrantless search of an impounded motor vehicle the day following its seizure); *State v. Grinier,* 34 Wn. App. 164, 659 P.2d 550 (1983) (warrantless search of a locked suitcase in an automobile); and *State v. Werth,* 18 Wn. App. 530, 571 P.2d 941 (1977), *review denied,* 90 Wn.2d 1010 (1978) (nonconsensual search of a private residence to locate escapee)—all involve the entry into or search of private property by the police for the purpose of arresting someone believed to be within or to search for contraband or criminal evidence believed to be within the defendant's property. While such cases represent the most frequently encountered reasons for an entry and search of private property, police owe other duties to the public, such as rendering aid to individuals in danger of physical harm, reducing the commission of crimes through patrol and other preventive measures, and providing services on an emergency basis. *See* 2 W. LaFave, *Search and Seizure* § 6.6, at 467 (1978).

The need to protect or preserve life, avoid serious injury, or protect property in danger of damage justifies an entry that would otherwise be illegal absent an exigency or emergency. *Wayne v. United States,* 318 F.2d 205, 212 (D.C. Cir.), *cert. denied,* 375 U.S. 860 (1963).

> Police may . . . enter private property for the purpose of protecting the property of the owner or occupant or some other person. One possibility is where the police reasonably believe that the premises have recently been or are being burglarized. Thus, police entry is justified on the basis of a breaking and entering call to police plus the discovery of an open door which bore evidence of being pried open . . .

(Footnotes omitted.) W. LaFave, § 6.6(b), at 473. *See Mann v. Cannon,* 731 F.2d 54, 59 n.5 (1st Cir. 1984); *United States v. Estese,* 479 F.2d 1273, 1274 (6th Cir. 1973); *People v. Berow,* 688 P.2d 1123, 1126 (Colo. 1984); *State v. Mann,* 440 So. 2d 406, 408 (Fla. Dist. Ct. App. 1983); *Car-*

*ter v. State,* 405 So. 2d 957, 960 (Ala. Crim. App.), *cert. denied,* 405 So. 2d 962 (Ala. 1981); *Commonwealth v. Fiore,* 9 Mass. App. 618, 403 N.E.2d 953, 954–55, *cert. denied,* 449 U.S. 938 (1980); *State ex rel. Zander v. District Court,* 180 Mont. 548, 591 P.2d 656, 659 (1979).

The court in *Commonwealth v. Fiore,* at 620–21, stated:

> It seems clear to us that a house break without more— as set out in the affidavit—raises the possibility of danger to an occupant and of the continued presence of an intruder and indicates the need to secure the premises. In such circumstances "[t]he right of the police to enter and investigate in an emergency without the accompanying intent to either search or arrest is inherent in the very nature of their duties as peace officers." *United States v. Barone,* 330 F.2d 543, 545 (2d Cir.), *cert. denied,* 377 U.S. 1004 (1964). *Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 298–300 (1967). *Michigan v. Tyler,* 436 U.S. 499, 509–510 (1978). *Commonwealth v. Thomas,* 358 Mass. 771, 774 n.2 (1971). *Commonwealth v. Kingsbury,* 7 Mass. App. Ct. 51, 53, *S.C.,* 378 Mass. 751 (1979). *See Marshall v. United States,* 422 F.2d 185, 187–189 (5th Cir. 1970); *United States v. Dunavan,* 485 F.2d 201, 204–205 (6th Cir. 1973).

Courts confronted with the question of justification for a warrantless entry into a recently burglarized dwelling have found exigent circumstances present justifying the entry.

The Colorado Supreme Court in *People v. Berow,* 688 P.2d at 1125–27 reversed an order suppressing marijuana and drug paraphernalia discovered in an apartment following a police officer's warrantless entry and search of the apartment. The entry and search was upheld because the officer reasonably believed that a burglary was in progress, having been informed by the apartment manager that the occupants were in California and that the apartment doors' hasps and locks had been forcibly removed. A neighbor indicated that she thought she had just seen movement within the apartment. Given such facts, the Colorado court found that the officer reasonably believed immediate action was necessary to protect the defendant's property and concluded, "Under the circumstances we refuse to second-

guess the officer's decision to search the apartment."

The Montana Supreme Court in *State ex rel. Zander v. District Court,* 550–53, upheld a deputy sheriff's warrantless entry into a trailer house through an unlocked door upon a report of a burglary in progress and refused to suppress the marijuana discovered following the initial entry. The entry was upheld even though the deputy sheriff could not see anyone inside and saw nothing suspicious outside the house. The Montana court said, at page 553,

> The officers at the time of entry were engaged in protecting the Zander property. This included determining whether any burglars were hiding inside the house. A prudent officer was warranted in believing that a felony had been attempted or committed and in concluding that prompt entry into the house was necessary to protect the property and determine whether the suspect was hiding in the house. *State v. Schrag* (1975), 21 Or.App. 655, 536 P.2d 461; *Henry v. United States* (1959), 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134; *Draper v. United States* (1959), 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.

In *United States v. Estese,* 479 F.2d at 1273–74, exigent circumstances were found to justify a warrantless police entry into the defendant's apartment in response to a radio call reporting a breaking and entering at the apartment. The police found evidence that the door had been pried open; the defendant was not at home. Upon entering the apartment to search for the burglar, the officers found marijuana in plain view and a sawed–off shotgun under a bed where a burglar could have been hiding. The defendant's motion to suppress such evidence was denied on the basis of a lawful entry into his apartment.

In a recent case with facts similar to those of the instant case, the Florida appellate court stated:

> The pickmarks on the door jamb near the lock, the bent–out screen, the unlocked door and the recent history of burglaries in the apartment complex, all pointed to a forced entry. In our view, this was sufficient to constitute probable cause to believe that a burglary had been or was being committed. Armed with probable cause, the officer's immediate entry without a warrant was justified

under the exigent circumstances exception to the warrant requirement of the state and federal constitutions.

(Footnote and citation omitted.) *State v. Mann,* 440 So. 2d at 408. The *Mann* court continued,

> While an exigent circumstance is often furnished by the need to determine whether emergency health care must be provided, this particular exception to the warrant requirement has been utilized where the immediate danger is to property rather than to people.

(Citation omitted.) *State v. Mann, supra.*

In the instant case the Bellingham police officers were responding to a call by Bakke's neighbor that Bakke's home was being burglarized. Their immediate duty was to investigate the reported burglary. They found the glass in the exterior rear door broken with an opening large enough for a juvenile to enter. They saw muddy footprints leading from the exterior door to an interior door, which was broken and ajar. A light from within was visible. The police were told that Bakke was not at home and could not be located and that his home had been burglarized previously. The trial court concluded that the officers had probable cause to believe that Bakke's residence had been burglarized. While the police had been told by the neighbors that two male juveniles had been observed running from the back door area of Bakke's house, they did not know for certain whether a burglar was still inside the house.

The emergency exception to the Fourth Amendment's warrant requirement requires that the entering officer subjectively believe that an emergency exists; therefore, the officer's motivation is the linchpin in the assertion of the emergency exception as justification for a warrantless entry. *Frazier v. Cast,* 771 F.2d 259, 265 (7th Cir. 1985).

> [W]hether an exigency existed, and whether the response of the police was reasonable and therefore lawful, are matters to be evaluated in relation to the scene as it could appear to the officers at the time, not as it may seem to a scholar after the event with the benefit of leisured retrospective analysis.

*Commonwealth v. Young,* 382 Mass. 448, 456, 416 N.E.2d 944, 950 (1981).

Here even though the police observed no activity within by looking into the exterior windows, they determined that it was necessary to apprehend any possible suspects therein and to secure the premises and its contents against the risk of damage and entered the home for that purpose, as the trial court found. Ample evidence existed of a recent forcible entry, but the presence or absence of suspects within the premises or the likelihood of damage to the interior could not be ascertained without entering the house. Officer Livesey testified that his purpose in entering the house was

> to ascertain, out there, if anybody was still in the house who did not belong; and what, if any, damage had occurred or was occurring. . . . Possibly the people seen running from the house had left a faucet on, started a fire someplace, you know, malicious mischief type of thing.

As to the standard practice in responding to a burglary report in such circumstances, Officer Livesey stated that

> [W]e try to get ahold of the owner of the residence to advise them what it is, then we do check it out, to . . . ascertain if there is any damage or if people are still in it.

*Cf. People v. Gardner,* 121 Ill. App. 3d 464, 459 N.E.2d 676, 678 (1984) (upon encountering unlocked door during patrol and routine check of businesses, official police department policy was to enter to determine whether an unauthorized entry had occurred and who the owner was so that he could be notified); *Commonwealth v. Fiore,* 403 N.E.2d at 956 (normal procedure if police came upon a break–in was to enter to ascertain whether an intruder was still inside). There is no suggestion that the house was entered on a pretext to search for contraband or illegal activity rather than to look for suspects and preserve the property.[3] Safe-

---

[3] "[T]he courts will be vigilant to ensure that the rationale of protecting private property is not employed as a subterfuge to seek out evidence of criminal conduct." *People v. Gardner,* 121 Ill. App. 3d 464, 470, 459 N.E.2d 676, 681 (1984). *See State v. Crabtree,* 655 S.W.2d 173, 179 (Tenn. Crim. App. 1983) (defendant entitled to present evidence to show that police created a mock bur-

guarding the life and property of the citizenry is an integral part of the police function.

In *State v. Campbell,* 15 Wn. App. 98, 547 P.2d 295 (1976), we upheld a warrantless entry where the police were summoned to the defendant's apartment to investigate a recent burglary and found a window broken, the door wide open, and the apartment apparently unoccupied. Upon entering the apartment to investigate the crime, the police discovered and seized marijuana plants. We upheld the seizure on the basis of exigent circumstances justifying a warrantless entry.

Bakke contends that *Campbell* is inapposite in that in the instant case no emergency existed since the residence was not unsecured and "wide–open" as in *Campbell.* We find inconsequential the factual difference between the "wide–open" door in *Campbell* and, in the instant case, the secured exterior door but broken door window with an opening large enough to admit a juvenile, coupled with muddy footprints leading to an interior door which was broken and ajar. What is significant is not the slight factual difference, but rather the similarities in the purposes and objects of the two searches. Here, as in *Campbell,* at 102,

> The challenged search followed the summoning of police to investigate a recent burglary and *was executed not against the occupant of the apartment, but to protect his person and property.*

(Italics ours.) What the defendant overlooks in his argument is that the police officers' attention in the instant case focused not on Bakke or upon his home as a target of a police search; rather, the challenged entry was to investigate a burglary and to secure the premises against possible damage. It was not to conduct a search against Bakke but to protect him and his property.

Like the court in *People v. Berow,* 688 P.2d at 1127, we are reluctant to "second–guess" the officers' decision to enter Bakke's house. We are persuaded that exigent cir-

---

glary as an excuse to make an unauthorized entry and search of his business).

cumstances did exist justifying the warrantless entry and limited intrusion into Bakke's home given probable cause to believe that the home had been burglarized.

Moreover, while we recognize the heightened protection of privacy required by article 1, section 7 of our state constitution, *State v. Stroud,* 106 Wn.2d 144, 150, 720 P.2d 436 (1986), we disagree with the trial court's conclusion that the police entry here violated our state constitution. Recently our state Supreme Court set forth six nonexclusive neutral criteria to aid in determining whether in a given situation the state constitution should be interpreted as extending broader rights to its citizens than does the federal constitution. *State v. Gunwall,* 106 Wn.2d 54, 61–62, 720 P.2d 808 (1986). Of relevance here is the *Gunwall* court's application of these criteria in determining that our state constitution's article 1, section 7, in contrast to the federal constitution's fourth amendment, extended greater protection against the disclosure of an individual's long distance telephone records and the installation of a telephone pen register. *Gunwall,* at 65–67, 69.

In the absence of any briefing on the state constitutional issue in the instant case, *see Gunwall,* at 62, we note that two relevant criteria here, preexisting state law and matters of particular state interest or local concern, *State v. Gunwall, supra,* lend support to our determination that our state constitution does not prohibit the police entry that occurred here. In *State v. Campbell, supra* at 100, we upheld a warrantless entry in similar circumstances. Moreover, the *Campbell* case indicates that the state interest in protecting its citizens' private property in an emergency situation is consistent with the Fourth Amendment's protection afforded to an individual's privacy rights so that extending the protection under our state constitution is unwarranted, *State v. Brooks,* 43 Wn. App. 560, 567–68, 718 P.2d 837 (1986).

Const. art. 1, § 7 prohibits unreasonable governmental intrusions into an individual's home or private affairs without the authority of law. *Gunwall,* at 68; *State v. Stroud,*

*supra* at 164 (Durham, J., concurring). Our prior case law permitting a warrantless entry into a home where a civil emergency exists implicitly holds that when such an emergency exists, that exigent circumstance provides the required "authority of law." *See State v. Stroud, supra* (Durham, J., concurring); *State v. Gunwall, supra* at 69.

If the initial entry and search was lawful and the officers were in a place where they had a right to be, then that which they saw in plain view could be used to support the subsequent issuance of the search warrant. *State v. Dresker,* 39 Wn. App. 136, 138, 692 P.2d 846 (1984) (citing *State v. Chrisman,* 100 Wn.2d 814, 676 P.2d 419 (1984)). As we recently stated in *State v. Bell,* 43 Wn. App. 319, 321, 716 P.2d 973 (1986),

> [the plain view] exception permits government officials to seize clearly incriminating evidence or contraband without a warrant if the official (1) has a prior justification for the intrusion into the protected area; (2) discovers the incriminating evidence inadvertently; and (3) immediately recognizes that he has evidence before him.

(Citations omitted.)

Here the officers, who entered the dwelling under exigent circumstances, searched only those areas of Bakke's home where a burglar could have been hiding. *State ex rel. Zander,* 591 P.2d at 658. The record does not indicate that the investigation exceeded a search reasonably calculated to disclose an intruder's presence. *State v. Mann,* 440 So. 2d at 409. Thus the officers' inadvertent discovery of the marijuana plants and growing paraphernalia in the walk-in closet did not go beyond the scope of a reasonable search to effectuate the purpose of the entry. *State v. Mann, supra; see State v. Crabtree,* 655 S.W.2d 173, 179 (Tenn. Crim. App. 1983).

Since the officers were engaged in a reasonable search, the inadvertent discovery of the objects in plain view, which were recognized immediately as evidence, was lawful. *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, *reh'g denied,* 404 U.S. 874 (1971);

*State v. Bell, supra.* Consequently, the lawfully obtained evidence could be used to support the subsequent issuance of a search warrant for Bakke's residence, and the suppression of evidence on grounds of an illegal initial warrantless entry was error. *State v. Dresker, supra.*

The judgment of dismissal is reversed and the cause is remanded for trial.

RINGOLD, A.C.J., and WEBSTER, J., concur.

Reconsideration denied October 21, 1986.

Review denied by Supreme Court March 4, 1987.