IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69860-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SETH MARSHALL HAMLETT, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 22, 2013 |

SCHINDLER, J. — Seth Hamlett seeks reversal of his conviction of one count of manufacturing marijuana in violation of RCW 69.50.401.[1] Hamlett contends the trial court erred by denying his motion to suppress evidence of a marijuana grow operation. Because the unchallenged findings of fact establish justification for the search of the home under the emergency aid exception to the warrant requirement, we affirm.

FACTS

On August 4, 2010, Seth Hamlett heard a tapping sound on the sliding glass door of his home. Hamlett saw two masked men trying to break the glass panel. Hamlett said that the two men were both carrying semiautomatic weapons. After the glass shattered, Hamlett fled from his house leaving the front door open, and ran across the street to his neighbor's house.

---

[1] We note the legislature amended RCW 69.50.401 in 2013 to add subsection (3) addressing the legal manufacturing of marijuana if in compliance with certain licensing requirements. LAWS OF 2013, ch. 3, §19.

Hamlett waited inside the neighbor's house while the neighbor called 911. Hamlett could not see his house while he was inside the neighbor's house. Hamlett then left to wait for the police outside. Hamlett attempted to call 911 again but hung up because he was afraid of being noticed by the burglars.

Kitsap County Sheriff Department Deputies Joshua Miller and Eric Adams arrived within minutes of the 911 call. Hamlett was standing at the end of the driveway to his house. Hamlett told the officers there were "two assailants with semi automatic weapons who tried to enter [his] home just minutes before." Hamlett said that he thought the two men ran into the woods and that his dog had chased after them, but he was not sure where exactly the men had gone or what they looked like.

The officers went around the outside of the house and saw that the pane of the rear sliding glass door was broken. The officers entered the house through the open front door "to secure the residence." The officers told Hamlett "he could not enter because the home needed to be secured first."

After looking in any place large enough to conceal a person, including the living room, bedrooms, and bathroom, Deputy Adams walked into the garage through an unlocked door inside the home. Deputy Adams saw numerous marijuana plants inside the garage.

The officers left the house and called the narcotics enforcement team. The narcotics team obtained a search warrant. The officers seized 189 marijuana plants, processed marijuana, marijuana pipes and bongs, packaging materials, a digital scale, and cash from the garage.

On December 7, 2010, the State charged Hamlett with one count of manufacturing a controlled substance in violation of RCW 69.50.401.

2

Hamlett filed a motion to suppress the evidence. Hamlett argued the officers' entry into his home was an unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution and article 1, section 7 of the Washington State Constitution. The State argued that the warrantless search was justified by the "emergency aid" exception to the warrant requirement.

Deputy Adams, Deputy Miller, and Hamlett testified at the CrR 3.6 hearing. Deputy Miller testified:

> [T]he subjects had been reported to be armed. Their location was unknown. [Hamlett] had told us that he thought maybe they were off in the brush because he heard some crashing.

Deputy Miller also testified that

> in that type of situation where the information we have is that there's armed suspects, we need to do everything we can to secure the scene before we start checking elsewhere. That was the last place that they were seen was in close proximity to the residence. [Hamlett] had described it as a robbery, and the logical conclusion is they were trying to steal something from the house, so the likelihood was that they could be inside.

Deputy Adams testified that after he went around to the back of the house and found the sliding glass door broken, he checked the "immediate wood line" as he walked back to the front of the home. Deputy Adams then checked inside the residence "[b]ecause it had been unsecured and it was unknown if the suspect or suspects were still inside the residence." Deputy Adams also testified that Hamlett told him he thought his dog ran after the suspects but "he also said he was unsure."

Hamlett testified that he told the officers that he believed his dog chased the suspects into the woods. But on cross-examination, Hamlett conceded the officers needed to make sure the two men were not still in the house.

Q     [I]f you knew the suspects were not in [the house], why didn't you go back into the home?

3

A    I didn't want to go close because the people had guns.  I didn't know the outcome. . . It's, you know, it's --

Q    Stressful?

A    It's like anything can happen. . . .

. . . .

Q    [I]sn't it a possibility that the officers want to assure that the home was safe before they let you go back into the home?

A    I am sure, sure, yes.

The court denied the motion to suppress and entered findings of fact and conclusions of law.

The court found that there were at least two masked men with semiautomatic weapons who tried to enter Hamlett's house just minutes before the officers arrived.  The court found that Hamlett was afraid and concerned for his safety when he fled from his home, ran to his neighbor's house across the street, and asked the neighbor to call 911.  The court also found that although Hamlett told police he believed the suspects ran into the brush, chased by his dog, "he could not identify the suspects nor exactly where they went."

The court concluded that it was "reasonable for law enforcement to enter the home to secure it."  The court also concluded the officers acted reasonably in responding to "a reasonable perceived need to render assistance" to Hamlett.  In addition, the court concluded the officers' entry into Hamlett's home was "not a pre-text to gain entry without a warrant."

Further, the court concluded the officers acted to protect "with the interest of public and officer safety in mind."

> The facts and circumstances of having masked intruders with semi-automatic weapons located at the premises just moments before would be very concerning to law enforcement as it related to safety of the public as well as their own safety.  Moreover, the front door was open, and it could not be ascertained for certain whether assailants might have entered the

premises. Under the totality of these facts and circumstances, it was reasonable for law enforcement to enter and secure the premises.

The court rejected Hamlett's argument that the officers should not have searched the house because he told them the suspects might be in the woods.

> It would be unreasonable and not in the public's interest for officers to render aid and protection based only upon the directions of a victim who is shocked and afraid. Law enforcement officers do not have to abandon or alter how they would reasonably and safely handle emergencies based on a subjective estimation of how much a victim's anxiety decreases. . . .
> . . . The open door . . . made it reasonably conceivable to the officers that the suspects could have entered the home and that armed criminal activity was ongoing.

The court also concluded that the search did not exceed the scope of the emergency aid exception by "securing the location for safety purposes" and "limit[ing] their search to places where a person might be concealing himself."

Hamlett waived his right to a jury trial and agreed to stipulated facts. The trial court found Hamlett guilty of one count of manufacturing marijuana. The court sentenced Hamlett to 60 days and 12 months supervision. Hamlett appeals.

## ANALYSIS

Hamlett contends the warrantless entry into his garage was unlawful and violated his rights under the Fourth Amendment of the United States Constitution and article 1, section 7 of the Washington State Constitution. Hamlett contends the warrantless entry into his house and the garage was not justified by the community caretaking exception to the warrant requirement because he told the officers that the two armed men were not in the house.

We review a trial court's decision on a motion to suppress to determine whether the findings are supported by substantial evidence and whether those findings, in turn, support the conclusions of law. State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489

(2003). We defer to the trier of fact on "issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), abrogated in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Because Hamlett does not challenge the court's findings of fact, they are verities on appeal. O'Neill, 148 Wn.2d at 571. We review conclusions of law de novo. State v. Johnson, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

The Fourth Amendment of the United States Constitution and article I, section 7 of the Washington State Constitution prohibit unreasonable searches and seizures. State v. Williams, 102 Wn.2d 733, 736, 689 P.2d 1065 (1984). Subject to " 'jealously and carefully drawn' " exceptions, a warrantless search is unreasonable. State v. Hendrickson, 129 Wn.2d 61, 72, 917 P.2d 563 (1996) (quoting State v. Bradley, 105 Wn.2d 898, 902, 719 P.2d 546 (1986)). Under the Washington State Constitution, "the home enjoys a special protection." State v. Schultz, 170 Wn.2d 746, 753, 248 P.3d 484 (2011). The emergency aid exception to the warrant requirement " 'allows for the limited invasion of constitutionally protected privacy rights when it is necessary for police officers to render aid or assistance.' " Schultz, 170 Wn.2d at 754 (quoting State v. Thompson, 151 Wn.2d 793, 802, 92 P.3d 228 (2004)).

The State bears the burden of establishing an exception to the warrant requirement. State v. Bakke, 44 Wn. App. 830, 833, 723 P.2d 534 (1986). The State must show that (1) the searching officer subjectively believed an emergency existed, (2) a reasonable person in the same circumstances would have thought an emergency existed, (3) there must be a reasonable basis for associating the need for assistance with the place that is entered, (4) there is an imminent threat of substantial injury to persons or

property, (5) police must believe a specific person or specific property are in need of immediate help, and (6) the claimed emergency is not a pretext for an evidentiary search. State v. Lynd, 54 Wn. App. 18, 21, 771 P.2d 770 (1989); Schultz, 170 Wn.2d at 754-55.

Here, the unchallenged findings establish the requirements to the emergency aid exception were met before entering the house. The officers' subjectively believed that Hamlett needed assistance for safety reasons, and that belief was objectively reasonable. The officers arrived within minutes of the 911 call. Hamlett was afraid for his safety and was waiting outside the home. The officers knew there were at least two suspects armed with semiautomatic weapons who were attempting to break into the house. After Hamlett saw the two masked men trying to break the glass panel of the sliding glass door of his house, he fled through the front door. While he was at the neighbor's house calling 911, Hamlett could not see his home, and he could not tell officers exactly where the suspects went. The front door was still open, and police did not know whether the suspects had entered the home after Hamlett fled. The unchallenged findings also state that the officers were not sure there were only two assailants.

The findings also establish there was an imminent threat of substantial injury to persons or property. The officers arrived minutes after two armed men had tried to break into Hamlett's home. Based on Hamlett's own report of a robbery in progress, the officers believed there were persons or property in danger. And, as the court concluded after hearing testimony from both officers, the claimed emergency was not a pretext for an evidentiary search. The officers' entry was unrelated to the arrest for manufacturing marijuana. The findings support the conclusion that the officers' entry into the home was justified by the emergency aid exception to the warrant requirement.

7

This court's decisions in State v. Campbell, 15 Wn. App. 98, 547 P.2d 295 (1976), and Bakke, support our conclusion. In both those cases, we addressed the emergency aid exception to the warrant requirement in the context of a reported burglary. In Campbell, this court held:

> It is reasonable for officers, responding to a request for police assistance and with probable cause to believe that an open, unsecured dwelling has been recently burglarized, to immediately enter the dwelling without a warrant for the limited purposes of investigating the crime, rendering aid to any possible victims of the felony, protecting the occupant's property, and searching for remaining suspects.

Campbell, 58 Wn. App. at 100. There, a neighbor saw the defendant's apartment being burglarized, saw a suspect flee, and called police. Campbell, 15 Wn. App. at 99. When the police arrived, they found the apartment window broken and the door to the apartment open. After entering the apartment to look for evidence of a burglary and to help any victims, the police found marijuana plants. Campbell, 15 Wn. App. at 99. The court concluded the intrusion into the "wide-open apartment to investigate the burglary was justified by the situation confronting him and was reasonable." Campbell, 15 Wn. App. at 100.

Likewise, in Bakke, a neighbor called police to report two juveniles fleeing from the back door of Bakke's home. Bakke, 44 Wn. App. at 831. Police arrived and found that the glass window of the back door was broken. Fresh muddy footprints led to an interior door which was ajar. The door jamb was broken. Bakke, 44 Wn. App. at 831. The police went inside the home to find suspects and to secure the home, and found marijuana plants. Bakke, 44 Wn. App. at 832. The trial court granted a motion to suppress the evidence found in the search but this court reversed, concluding that exigent circumstances justified the "warrantless entry and limited intrusion into Bakke's

home given probable cause to believe that the home had been burglarized." Bakke, 44 Wn. App. at 832, 839-40.

Hamlett's attempt to distinguish Campbell and Bakke is unpersuasive. Hamlett claims that unlike in Campbell and Bakke, he told the police he believed the suspects were not in the home. But the unchallenged findings also establish that Hamlett was not sure where the suspects went, did not see what was happening at his home while he was at the neighbors' contacting 911, and did not know whether the suspects were still in the house.[2]

Because the court's findings of fact support its conclusions of law that the emergency aid exception justified the officers' entry into Hamlett's home, the court did not err in denying Hamlett's motion to suppress. We affirm.[3]

WE CONCUR:

---

[2] The unchallenged finding of fact states that Hamlett "could not identify the suspects nor exactly where they went."

[3] Several of the cases Hamlett relies on are inapposite because they address the search incident to arrest exception to the warrant requirement, not the emergency aid exception. Further, none involve a reported burglary in progress at the searched home. See Maryland v. Buie, 494 U.S. 325, 110 S. Ct. 1093, 108 L. Ed. 2d. 276 (1990); State v. Hopkins, 113 Wn. App. 954, 55 P.3d 691 (2002); State v. Boyer, 124 Wn. App. 593, 102 P.3d 833 (2004).