**UNITED STATES of America,**

v.

**Eugene BOYD, Defendant.**

**No. 75 Cr. 1104.**

United States District Court,
S. D. New York.

Jan. 21, 1976.

----

694

Thomas J. Cahill, U. S. Atty. for the Southern District of New York, New York City, for the United States; John P. Flannery, II, Asst. U. S. Atty., New York City, of counsel.

Irving Novis, Brooklyn, N. Y., for defendant.

## OPINION

EDWARD WEINFELD, District Judge.

The defendant, indicted for receipt and possession of three sawed-off shotguns which were not registered to him and for possession of a Sturm Ruger revolver, moves pursuant to Rule 41 of the Federal Rules of Criminal Procedure to suppress the weapons as evidence upon the ground they were seized without a search warrant. A hearing was conducted which developed the circumstances under which they were seized. Gerald Anthony, a police officer of the New York City Police Department, testified that while on duty he was requested by Richard Smith, the building superintendent of premises 2166 Eighth Avenue, New York City, and by one of the tenants to assist in locating the origin of a water leak in the "J" line of the apartments where defendant's apartment was located. In response thereto, the officer and the superintendent entered an apartment on the third floor of the building, with the consent of the tenant, where they observed water coming down through the ceiling. They traced the leak to the vacant apartment directly above and observed similar leakage through the ceiling of that apartment. They then proceeded to defendant's apartment, which was the next in line on the fifth floor. The officer knocked on defendant's door but received no answer, so he listened at the door and heard both the water running and a television set or radio playing. Both he and the superintendent went down to the fire escape on the fourth floor, climbed to defendant's floor and attempted to look through defendant's window to ascertain the source of the running water. The officer observed a hole, which he assumed to have been caused by a bullet, in the window, and the venetian blind, whereupon he pulled down the window slightly, moved the venetian blind aside and saw a number of rifles stacked up against one wall in the apartment. He and the superintendent then entered the premises through the window by breaking the bottom half of the window, which was stuck. Weapons were subsequently found under two beds and in the closet of the apartment.

■ There is no doubt that the officer had the right to enter the common passageways of the building with the consent of the landlord's agent, the superintendent. In fact, the landlord could have consented to a search of such common areaways, including the fire escapes, since he was equally in possession and control of these areas, as where his tenants.[1] And, while the officer was standing outside defendant's apartment door, where he had a right to be, he was not invading defendant's privacy by hearing the television or the water running inside.[2] The same is, of course, true for his observation of the bullet hole in defendant's window.

■ Thus, the only real issue is whether the officer had the right to pull

1. *United States v. Gargiso,* 456 F.2d 584, 587 (2d Cir. 1972).

2. *See, e. g., United States v. Llanes,* 398 F.2d 880, 884 (2d Cir. 1968), *cert. denied,* 393 U.S. 1032, 89 S.Ct. 647, 21 L.Ed.2d 576 (1969); *Ponce v. Craven,* 409 F.2d 621, 625 (9th Cir. 1969).

down defendant's window and peer inside, since to make use of the "plain view" doctrine the government must show that the officer "had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused."[3] In *Coolidge*, the Supreme Court defined such a prior justification to be, among others, a "legitimate reason for being present unconnected with a search directed against the accused."[4]

The court finds that the officer in the instant situation had such a "legitimate reason" unrelated to any search for contraband for pulling down the window and looking inside defendant's apartment and, further, that there were "exigent circumstances" which fully justified his entering defendant's premises without a search warrant.[5]

The leaking water, which the officer observed at first hand in the apartments on the third and fourth floors of the building, presented a dangerous condition which, if allowed to continue might well have caused the collapse of ceilings and walls, endangering the lives of the inhabitants of the apartments. The officer, in testifying, emphasized that "leaks can cause buildings to collapse and when buildings collapse, people can be killed," and that he "felt the property was in danger of failing."[6] Under the circumstances, the officer had a legitimate concern for the imminent threat of injury to persons from the structural damage in the apartments below defendant's.

Thus, this court holds that the officer's forcible entry into defendant's premises without awaiting defendant's return or obtaining a search warrant was lawful, since a "prudent and cautious police officer could reasonably have concluded that immediate entry to the apartment was imperative" to safeguard life and property.[7] Therefore, when the officer "inadvertently" discovered the rifles and sawed-off shotgun leaning against the wall, he was in a place where he had a right to be, and the seizure of these guns as contraband was lawful and in no way contrary to the Fourth Amendment.[8] And, after sighting the guns against the wall, the officer then had a further right to search the entire apartment both for his own protection and in the event that someone was injured therein.[9]

Under the circumstances, as testified to by the officer making the search and seizure, this court finds that the seizure of all of the firearms was lawful, and thus, that it did not violate defendant's Fourth Amendment rights, so that the motion to suppress is denied.

3. *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971).

4. *Id.* 466, 91 S.Ct. 2038.

5. *Id.* 468, 91 S.Ct. 2022.

6. Tr. of Hearing p. 18.

7. *Chappell v. United States,* 119 U.S.App.D.C. 356, 342 F.2d 935, 938 (1965).

8. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

9. *See, e. g., United States v. Johnson,* 506 F.2d 674, 676 (8th Cir.), *cert. denied,* 421 U.S. 917, 95 S.Ct. 1579, 43 L.Ed.2d 784 (1974).