629 A.2d 1247

**STATE of Maryland,**

v.

**Michael CARROLL.**

**No. 376, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Aug. 31, 1993.

Certiorari Granted Dec. 10, 1993.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Thomas E. Hickman, State's Atty. for Carroll County, Westminster, on the brief), for appellant.

Paul J. Feeley, Jr., Cockeysville, for appellee.

Submitted before BISHOP, GARRITY and HARRELL, JJ.

BISHOP, Judge.

Appellee, Michael Carroll (Carroll), was indicted in the Circuit Court for Carroll County for five offenses: manufac-turing a controlled dangerous substance (marijuana), posses-sion of marijuana with the intent to distribute, maintaining a common nuisance, possession of marijuana, and possession of drug paraphernalia. The circuit court conducted a hearing on Carroll's motion to suppress physical evidence and granted that motion without opinion. Appellant, the State of Maryland (the State), filed a timely notice of appeal to this Court pursuant to Md.Cts. & Jud.Proc.Code Ann. § 12–302(c)(3) (1989).

### Issue

The sole issue is whether the court erroneously granted Carroll's motion to suppress.

### Facts

At the motion hearing, Carroll and the State admitted as a joint exhibit a certified copy of an Application and Affidavit for Search and Seizure Warrant. No witnesses testified and no other evidence was introduced. The parties, therefore, argued the motion based solely on the facts contained in the affidavit.

"When the question is whether a constitutional right, such as the one here, has been violated, we make our own independent constitutional appraisal. We make the appraisal by reviewing the law and applying it to the peculiar facts of the particular case." *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990). The facts leading to Carroll's arrest are as follows.

Deputy First Class Mark Gonder (Gonder) of the Carroll County Sheriff's Department affirmed that, on Friday, July 24, 1992, he and other members of the department sought to locate and arrest Joe Hudson, who had escaped from work release at the Detention Center. Gonder and Deputies Lust and Prise went to 6047 Oakland Mills Road in Eldersburg because they believed Hudson was hiding there. The house

was divided into two apartments. Gonder contacted Terry Lynn Penn (Penn), who lived in the upstairs apartment. Penn stated that Hudson had been there the prior evening at approximately 11:00 p.m., but that he had since left. Penn gave the officers permission to search the residence.

The downstairs apartment was accessible by way of a doorway to the rear of the building. That entrance consisted of a wooden door inside of a screen door. Upon going to the rear of the building, the deputies observed that the screen door was open, one of four panes of glass was missing from the wooden door, and the wooden door was open approximately two inches. In Gonder's opinion, "it appeared that someone made forced entry into the apartment." Gonder again contacted Penn and asked if the basement door was secured. She stated that it was and that the occupant, Carroll, would not be home until Saturday or Sunday (July 25 or 26).

Gonder and Prise returned to the downstairs apartment. Gonder identified himself and entered the apartment, continuing to announce his presence as he did so. There was no response to his calls. Once inside the apartment, Gonder observed in plain view several marijuana plants growing in an area of the apartment. After determining that the apartment was unoccupied, Gonder left without disturbing the evidence, and Prise secured the apartment.

Based on the affidavit, a district court judge issued a search and seizure warrant the same day. The deputies executed the warrant at 4:00 p.m. that day and seized a large quantity of evidence.

### Discussion

The State contends that the motion court erred when it suppressed the evidence because: (1) the warrantless entry into the house was reasonable conduct within the meaning of the Fourth Amendment; and (2) even if the initial entry was illegal, probable cause to search the apartment existed prior to the entry, a search warrant would have issued regardless of that entry and, therefore, the evidence would have been

inevitably discovered. We need not reach the State's second contention because we hold that the warrantless search was reasonable.

 It is axiomatic that the Fourth Amendment bars only *unreasonable* searches and seizures. *See Maryland v. Buie*, 494 U.S. 325, 331, 110 S.Ct. 1093, 1097, 108 L.Ed.2d 276 (1990); *McMillian v. State*, 325 Md. 272, 281, 600 A.2d 430 (1992). In determining reasonableness, we must balance "the intrusion on the individual's Fourth Amendment interest against its promotion of legitimate governmental interests. Under this test, a search of the house or office is generally not reasonable without a warrant issued on probable cause." *Buie*, 494 U.S. at 331, 110 S.Ct. at 1097 (citations omitted). Nevertheless, exigent circumstances may obviate the warrant requirement. *See, e.g., Oken v. State*, 327 Md. 628, 645–47, 612 A.2d 258 (1992) (warrantless entry into townhouse held reasonable where witness told police that she had reason to believe that her sister was missing and that some harm had come to her, and that when she went to appellant's house to check on her sister, she found the door ajar, the house in disarray, and blood on the floor); *Burks v. State*, 96 Md.App. 173, 195–98, 624 A.2d 1257 (1993) (warrantless entry into motel room to rescue kidnapping victims held reasonable).

In *Stackhouse v. State*, 298 Md. 203, 212, 468 A.2d 333 (1983), the Court of Appeals explained that "exigency implies urgency, immediacy, and compelling need." Neither this Court nor the Court of Appeals has heretofore considered whether an apparent housebreaking, either in progress or recently· committed, constitutes exigent circumstances. Courts of other jurisdictions that have addressed the issue, however, are in complete agreement that where police have probable cause to believe that a housebreaking had been or is being committed, a warrantless search of the house to determine whether the intruder is still present, or to ascertain whether there are victims in need of assistance, does not offend the Fourth Amendment.

For example, in *Commonwealth v. Fiore*, 9 Mass.App.Ct. 618, 403 N.E.2d 953, *cert. denied*, 449 U.S. 938, 101 S.Ct. 336, 66 L.Ed.2d 160 (1980), the police received information that a cottage in a vaguely described area may have been broken into. The police went to an area that matched the description given and, by happenstance, located a cottage that had had its outer door torn off. An officer entered through the doorway and found the inner door to be ajar. He looked to see if anyone was inside, but found no one. In doing so, however, he discovered a hole in the floor where he saw and smelled a quantity of hashish. The Appeals Court of Massachusetts affirmed the trial court's denial of a motion to suppress that evidence. The Court explained:

> It seems clear to us that a house break without more—as set out in the affidavit—raises the possibility of danger to an occupant and of the continued presence of an intruder and indicates the need to secure the premises. In such circumstances "[t]he right of the police to enter and investigate in an emergency without the accompanying intent to either search or arrest is inherent in the very nature of their duties as peace officers."

*Id.*, 403 N.E.2d at 954–55 (*quoting United States v. Barone*, 330 F.2d 543, 545 (2d Cir.), *cert. denied*, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964)); *see also United States v. Dart*, 747 F.2d 263, 267 (4th Cir.1984) (warrantless entry into storage unit and cursory search for intruders held reasonable where unit "had clearly been burglarized, and [police] had reason to believe that the perpetrators were still on the premises"); *United States v. Estese*, 479 F.2d 1273, 1274 (6th Cir.1973) (probable cause to believe that a burglary had been or was being committed justified warrantless entry into apartment where police received a call for a breaking and entering and, upon arrival, found the door to the apartment pried open); *Carter v. State*, 405 So.2d 957, 959–60 (Ala.Crim.App.) (detective's warrantless entry into apartment was based on probable cause to believe apartment had been burglarized because the apartment was immediately next door to an apartment where a known burglary and rape had just oc-

curred; the detective observed vise-type pliers lying in front of the door to the apartment; a key was in the unlocked door; and, upon knocking several times and announcing his presence, no .one replied; "Any police officer faced with these circumstances would have investigated to be certain there was no injured, disabled, or dying victim ... or to determine if a vacant apartment had been burglarized."), *cert. denied,* 405 So.2d 962 (Ala.1981); *People v. Duncan,* 42 Cal.3d 91, 227 Cal.Rptr. 654, 656–658, 720 P.2d 2, 5–6 (1986) (en banc) (reported burglary, open window, and box containing a television set and other items on the ground beneath the window justified warrantless entry); *People v. Berow,* 688 P.2d 1123, 1126–27 (Colo.1984) (en banc) (forcible removal of apartment door's locks and hasps and witness's report of seeing movement inside apartment led the police officer reasonably to believe "that immediate action was necessary to protect the defendants' property"); *State v. Mann,* 440 So.2d 406, 407–08 (Fla.Dist.Ct.App.1983) ("pickmarks on the door jamb near the lock, the bent-out screen, the unlocked door and the recent history of burglaries in the apartment complex, all pointed to a forced entry ... sufficient to constitute probable cause to believe that a burglary had been or was being committed"); *State ex rel. Zander v. District Court,* 180 Mont. 548, 591 P.2d 656, 659 (1979) ("prompt entry into the home was necessary to protect the property and determine whether the suspect was hiding in the house" where witness reported that someone was tampering with window, nobody was home, and that the door was always locked when occupants were away, and the police discovered an unlocked front door); *cf. United States v. Selberg,* 630 F.2d 1292, 1295–96 (8th Cir.1980) (warrantless entry held unreasonable where police had no reason to believe that a crime had been or was being committed and that entry was necessary to protect the property). *See generally* 68 Am.Jur.2d *Searches and Seizures* § 82 (1993); 2 Wayne R. LaFave, *Search and Seizure* § 6.6 (2d ed. 1987).

The burden of establishing exigent circumstances rests with the State. *McMillian,* 325 Md. at 282, 600 A.2d 430. "To determine whether exigent circumstances were

present, we must limit our review to what the police reasonably believed at the time of their warrantless entry." *Id.* (citing *Ker v. California,* 374 U.S. 23, 40 n. 12, 83 S.Ct. 1623, 1633 n. 12, 10 L.Ed.2d 726 (1963); *Johnson v. United States,* 333 U.S. 10, 17, 68 S.Ct. 367, 370, 92 L.Ed. 436 (1948)).

■ It is clear that the deputies had a reasonable basis, approximating probable cause, to believe that Carroll's apartment either had recently been or was in the process of being broken into. Both the screen door and the wooden door were open. One of the four panes of glass in the wooden door was missing. Penn advised Gonder that the occupant of the apartment was not home, that he was not expected back until the following day or the day after, and that the apartment was secured. These facts establish the probability that someone forcibly entered the apartment. It was manifestly reasonable for the deputies to enter the apartment, after first identifying their presence, to determine (1) whether the apartment had in fact been illegally entered, (2) whether the intruder was still present within the apartment, and (3) whether there was an occupant or invitee in need of assistance or medical attention. Although the deputies went to the apartment to find Hudson, there is nothing in the record to suggest that the deputies entered the apartment for any reason other than to investigate the suspicious condition. Indeed, the deputies had no reason to suspect that they would find contraband within the apartment.

"The facts of the present case emphasize the reasonable need for prompt police action to deter a potential [housebreaking]. As one court noted in a similar case, 'to allow this situation to go uninvestigated for the several hours it would have taken to obtain a warrant would have allowed a grave public danger to go uncorrected....' " *Mann,* 440 So.2d at 408 (*quoting United States v. Moskow,* 588 F.2d 882, 892 (3d Cir.1978)); *see also Duncan,* 227 Cal.Rptr. at 657, 720 P.2d at 6 ("It would have been poor police work indeed for an officer to fail to investigate under circumstances suggesting a crime in progress.").

Accordingly, we hold that the deputies' entry into Carroll's apartment was reasonable under the particular facts of this case. Carroll does not contest the applicability of the plain view doctrine. Thus, the warrantless entry and the discovery of marijuana plants during that entry did not taint the issuance of the search and seizure warrant. The court should have denied the motion.

**ORDER OF THE CIRCUIT COURT FOR CARROLL COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS; APPELLEE TO PAY THE COSTS.**