646 A.2d 376

**Michael CARROLL**

**v.**

**STATE of Maryland.**

**No. 114, Sept. Term, 1993.**

Court of Appeals of Maryland.

Aug. 24, 1994.

724

Paul J. Feeley, Towson (Paul J. Feeley, Jr. on brief), for petitioner.

Thomas K. Clancy, Asst. Atty. Gen., J. Joseph Curran, Jr., Atty. General, on brief, Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RAKER, Judge.

We granted Michael Carroll's petition for a writ of certiorari to consider whether, under the exigent circumstances exception to the warrant requirement of the Fourth Amendment, the Carroll County Deputy Sheriffs' belief that a burglary had

recently been committed in Carroll's home justified their warrantless entry into his home. Like the Court of Special Appeals, we conclude that the entry was lawful under the exigent circumstances exception to the warrant requirement. Accordingly, we affirm the judgment of the Court of Special Appeals.

## I.

Michael Carroll was indicted in the Circuit Court for Carroll County on August 27, 1992, on the charges of manufacturing a controlled dangerous substance, possession of a controlled dangerous substance with intent to distribute, maintaining a common nuisance and possession of a controlled dangerous substance and drug paraphernalia in violation of Maryland Code (1957, 1992 Repl.Vol.) Art. 27, §§ 286, 287 & 287A. Carroll filed a timely motion to suppress the physical evidence the Carroll County Sheriff's Department seized pursuant to the search and seizure warrant it executed on his residence. The warrant was issued to the deputy sheriffs following their warrantless entry into Carroll's home and was based on their observations made during their initial entry.

The facts which were produced at the suppression hearing were set forth in the affidavit in support of the search and seizure warrant executed at Carroll's residence. No witnesses testified and no other evidence was introduced at the suppression hearing.[1] The affidavit revealed, in pertinent part, the following:

---

1. A review of the decision to issue a search warrant is normally confined to the four corners of the affidavit and the warrant. *State v. Lee*, 330 Md. 320, 326, 624 A.2d 492, 495 (1993). Because the claim here was that the warrantless actions of the deputy sheriffs before the issuance of the search warrant violated Carroll's rights under the Fourth Amendment, the motion court properly could have received evidence beyond the factual predicate set out in the application for the warrant. *Everhart v. State*, 274 Md. 459, 479, 337 A.2d 100, 111 (1975). At the motions hearing, however, the parties in this case chose to rely solely on the affidavit and the warrant. In an attempt to create a conflict in the observations of the deputy sheriffs, Carroll now presents this Court with a supplemental report prepared by one of the deputies

[O]n July 24, 1992, [Deputy First Class Mark Gonder (Gonder)] assisted the Carroll County Sheriff's Department in an attempt to locate and arrest one, Joe Hudson, who had escaped from Work Release at the Detention Center. [Gonder] and Dfc's Lust and Prise went to [6047 Oakland Mills Road, Eldersburg, Maryland] believing that the suspect Hudson might be hiding there. [Gonder] contacted a resident of the upstairs apartment, Terry Lynn Penn. Penn stated Hudson had been there last night at approximately 2300 hrs., but he had left. Penn then gave [Gonder] and other officers permission to search the residence. Upon going to the rear of the residence [Gonder] observed the rear apartment door. The screen door was open and a pane of glass was missing from the door's window and the door was approximately two inches open, it appeared that someone made forced entry into the apartment. [Gonder] then contacted Miss Penn and asked her if the basement apartment was secured. She stated that it was and that the occupant Mike Carroll wouldn't be home until Saturday or Sunday (07–25,26–92). [Gonder] and Dfc Prise then went to the downstairs apartment. [Gonder] identified himself and entered the apartment, continuing to announce his presence. There was no response to [Gonder's] calls. Once inside of the apartment, [Gonder] observed several marijuana plants growing in an area of the apartment. The apartment was unoccupied and the evidence was not disturbed. The apartment was secured by Dfc. Jay Prise of the Carroll County Sheriff's Department.

Deputy First Class Gonder then left the premises to secure a search and seizure warrant. On the same day, the Circuit Court for Carroll County issued a search and seizure warrant to the deputy sheriffs. At 4:00 p.m. that afternoon, they executed the warrant and seized controlled dangerous substances, paraphernalia and firearms from Carroll's apartment.

------

present during the initial entry into Carroll's residence. Because the record at the suppression hearing is the exclusive source of the facts for our review, *Lee v. State*, 311 Md. 642, 648, 537 A.2d 235, 237 (1988), we do not take this supplemental report into consideration.

Based upon these facts, the circuit court granted Carroll's motion to suppress. The State appealed this ruling to the Court of Special Appeals pursuant to Maryland Code (1974, 1989 Repl.Vol.) § 12–302 of the Courts and Judicial Proceedings Article. The Court of Special Appeals reversed the order of the trial court and remanded the case for further proceedings. *State v. Carroll,* 97 Md.App. 234, 629 A.2d 1247 (1993). We granted certiorari.

The State argues that the deputy sheriffs had probable cause to believe that a burglary was in progress or had recently been committed and that exigent circumstances justified their initial warrantless entry. Carroll contends that the initial warrantless entry did not fall within any of the recognized exceptions to the warrant requirement and, therefore, violated his rights under the Fourth Amendment.

## II.

The validity of the search and seizure warrant issued to the Carroll County Sheriff's Department hinges on the legality of the initial warrantless entry into Carroll's residence. Evidence derived as a result of a prior illegal search or seizure cannot be used as a basis for probable cause in a subsequent application for a search and seizure warrant. *Everhart v. State,* 274 Md. 459, 481, 337 A.2d 100, 113 (1975); *Carter v. State,* 274 Md. 411, 438, 337 A.2d 415, 431 (1975). Because the State does not dispute that the search and seizure warrant was based solely upon the deputies' observations made during the initial warrantless entry, the State bears the burden of proving that the initial warrantless entry was justified, *People v. Duncan,* 42 Cal.3d 91, 227 Cal.Rptr. 654, 656, 720 P.2d 2, 5 (1986), and because the State asserts that the initial warrantless entry was justified under the exigent circumstances exception to the warrant requirement, it bears the burden of proving the existence of exigent circumstances. *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971); *McMillian v. State,* 325 Md. 272, 282, 600 A.2d 430, 435 (1992).

The Fourth Amendment to the United States Constitution [2] prohibits unreasonable searches and seizures and provides that no warrants shall issue without probable cause. The physical entry into the home is the chief evil against which the wording of the Fourth Amendment is directed, *Welsh v. Wisconsin*, 466 U.S. 740, 748, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732, 742 (1984); *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752, 764 (1972), and the warrant requirement, which is imposed on government agents and officers who seek to enter for the purposes of search, seizure or arrest, is a principal protection against unreasonable intrusions into private dwellings. *Welsh*, 466 U.S. at 748, 104 S.Ct. at 2097, 80 L.Ed.2d at 742; *see also Payton v. New York*, 445 U.S. 573, 586 & n. 24, 100 S.Ct. 1371, 1380 & n. 24, 63 L.Ed.2d 639, 650 & n. 24 (1980).

█  The Fourth Amendment prohibits only those searches and seizures that are unreasonable. *Florida v. Jimeno*, 500 U.S. 248, 249–50, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297, 302 (1991); *McMillian*, 325 Md. at 281, 600 A.2d at 434. Moreover, the Supreme Court has recognized that a warrantless search and seizure does not violate the Fourth Amendment when law enforcement officers are faced with exigent circumstances such that there is a "compelling need for official action and no time to secure a warrant." *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486, 498 (1978) (burning building); *See also United States v. Santana*, 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409–10, 49 L.Ed.2d 300, 305–06 (1976) (hot pursuit); *Warden v. Hayden*, 387 U.S. 294, 298–300, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782, 787–88 (1967) (hot pursuit and danger to human life); *Schmerber v. California*, 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908, 919–20 (1966) (imminent destruction of evanescent evidence);

---

2.  The Fourth Amendment states:

    The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

*Ker v. California,* 374 U.S. 23, 37–41, 83 S.Ct. 1623, 1632–34, 10 L.Ed.2d 726, 740–42 (1963) (destruction of evidence).

On several occasions, this Court has considered the applicability of the exigent circumstances exception to various situations involving warrantless entries, searches and seizures. *See Oken v. State,* 327 Md. 628, 612 A.2d 258 (1992) (warrantless search of home upheld where police had reason to believe injured person or suspects may have been inside), *cert. denied,* —— U.S. ——, 113 S.Ct. 1312, 122 L.Ed.2d 700 (1993); *McMillian v. State, supra* (warrantless entry of private social club held unlawful where no risk of destruction or removal of evidence existed); *Stackhouse v. State,* 298 Md. 203, 468 A.2d 333 (1983) (presence of defendant's sister did not pose risk of destruction or removal of evidence to justify warrantless search of defendant's attic); *Lebedun v. State,* 283 Md. 257, 390 A.2d 64 (1978) (emergency situation justified warrantless search of motel room to protect rescue squad and to investigate possible criminal activity); *Nilson v. State,* 272 Md. 179, 321 A.2d 301 (1974) (warrantless entry of apartment upheld where police had reason to believe that armed robbers were inside and that delay might permit escape); *Davis v. State,* 236 Md. 389, 204 A.2d 76 (1964) (where police found dead person in defendant's back yard, warrantless search of his home was justified to determine whether more than one person had been victimized), *cert. denied,* 380 U.S. 966, 85 S.Ct. 1113, 14 L.Ed.2d 156 (1965).

We recently had occasion to consider the emergency exception to the warrant requirement in *Oken v. State, supra.* In *Oken,* a Baltimore County police officer went to Oken's townhouse in response to a "suspicious condition" radio call. 327 Md. at 643, 612 A.2d at 265. When he arrived at the scene, the officer was met by the complainant. The complainant told the officer that she believed that her sister was missing and that some harm had come to her. The complainant's belief was based upon the fact that when she arrived at Oken's house, the door was ajar, the house was in disarray and blood was on the floor near the entrance. *Id.* at 643–44, 612 A.2d at 265. Without a warrant, the officer entered the residence " 'to

see if there was anyone injured in the house, [and] to look for any suspect.'" *Id.* at 644, 612 A.2d at 265. Writing for the Court, Judge Karwacki stated: "Based on our independent constitutional appraisal of this uncontradicted evidence at the suppression hearing, we hold that Sergeant Branham's decision to enter Oken's home was both reasonable and justifiable under the emergency exception to the warrant requirement." *Id.* at 646, 612 A.2d at 267. *Oken* was premised on the rationale that the possible need to render medical aid and to determine if a suspect or intruder remained inside the residence constituted exigent circumstances and an emergency.

Until today we have not considered whether, under the exigent circumstances exception to the warrant requirement of the Fourth Amendment, law enforcement officers may enter a home without a warrant for the purpose of investigating a probable burglary. Although the Supreme Court has not addressed this specific issue, the numerous state and federal courts which have considered this question have all held that warrantless entries are justified on the basis of exigent circumstances when the police reasonably believe that a burglary is in progress or has recently been committed. *See United States v. Johnson,* 9 F.3d 506, 509–10 (6th Cir.1993); *Reardon v. Wroan,* 811 F.2d 1025, 1029–30 (7th Cir.1987); *United States v. Valles–Valencia,* 811 F.2d 1232, 1236 (9th Cir.), *amended on other grounds,* 823 F.2d 381 (9th Cir.1987); *United States v. Singer,* 687 F.2d 1135, 1144 (8th Cir.1982), *adopted in relevant part,* 710 F.2d 431 (8th Cir.1983); *Mann v. Cannon,* 731 F.2d 54, 59 & n. 5 (1st Cir.1984); *United States v. Estese,* 479 F.2d 1273, 1274 (6th Cir.1973); *Carter v. State,* 405 So.2d 957, 960 (Ala.Cr.App.), *cert. denied,* 405 So.2d 962 (Ala.1981); *Duncan,* 227 Cal.Rptr. at 656–58, 720 P.2d at 5–6; *People v. Unruh,* 713 P.2d 370, 379–80 (Colo.), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986); *People v. Berow,* 688 P.2d 1123, 1126–27 (Colo.1984); *State v. Mann,* 440 So.2d 406, 408 (Fla.Dist.Ct.App.1983); *Commonwealth v. Fiore,* 9 Mass.App.Ct. 618, 403 N.E.2d 953, 954–56, *cert. denied,* 449 U.S. 938, 101 S.Ct. 336, 66 L.Ed.2d 160 (1980); *In re Forfeiture of $176,598,* 443 Mich. 261, 505

N.W.2d 201, 206 (1993); *State v. Metz*, 422 N.W.2d 754, 756–57 (Minn.Ct.App.1988); *State ex rel. Zander v. District Court*, 180 Mont. 548, 591 P.2d 656, 659 (1979); *State v. Crabtree*, 655 S.W.2d 173, 179 (Tenn.Crim.App.1983); *State v. Bakke*, 44 Wash.App. 830, 723 P.2d 534 (1986), *cert. denied*, 107 Wash.2d 1033 (1987); *cf. United States v. Erickson*, 991 F.2d 529 (9th Cir.1993); *United States v. Selberg*, 630 F.2d 1292, 1295–96 (8th Cir.1980); *State v. Bramson*, 94 Or.App. 374, 765 P.2d 824, 826 (1988); *State v. Muir*, 67 Wash.App. 149, 835 P.2d 1049, 1051–53 (1992).

The Massachusetts Appeals Court considered the exigency circumstances exception in determining the lawfulness of a warrantless entry into a home in *Commonwealth v. Fiore, supra*. Law enforcement officers responded to an informant's tip that there was a possibility of narcotics, guns and a housebreak at a location within the town of Brimfield. 403 N.E.2d at 954. When they arrived at that location, the officers approached the defendant's cottage and noticed that the outside door to the cottage had been torn off and the inner door was ajar. *Id.* An officer entered the cottage and, although finding no one inside, discovered hashish stored in a hole in the floor. *Id.* The next day the officer applied for and received a warrant to search the cottage. *Id.* In holding the initial entry lawful and the subsequently issued warrant to be valid, the court stated:

> It seems clear to us that a house break without more—as set out in the affidavit—raises the possibility of danger to an occupant and of the continued presence of an intruder and indicates the need to secure the premises. In such circumstances "[t]he right of the police to enter and investigate in an emergency without the accompanying intent to either search or arrest is inherent in the very nature of their duties as peace officers."

*Fiore*, 403 N.E.2d at 954–55 (quoting *United States v. Barone*, 330 F.2d 543, 545 (2d Cir.), *cert. denied*, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964)).

In *State ex rel. Zander v. District Court, supra,* the Supreme Court of Montana was also confronted with the question of whether there were exigent circumstances to justify a warrantless entry into a dwelling where the deputy sheriffs responded to a report of a burglary in progress. 591 P.2d at 658. They found the front door unlocked. They were informed that no one was home and that the door was always locked when the occupants were away. *Id.* Although the deputies could not see anyone inside and saw nothing suspicious outside the residence beyond the unlocked front door, the court upheld the entry. *Zander,* 591 P.2d at 659. The court said:

> The officers at the time of entry were engaged in protecting the Zander property. This included determining whether any burglars were hiding inside the house. A prudent officer was warranted in believing that a felony had been attempted or committed and in concluding that prompt entry into the home was necessary to protect the property and determine whether the suspect was hiding in the house.

*Id.* (citations omitted).

In a similar vein, in his treatise on the law of search and seizure, Professor LaFave notes:

> Police may also enter private property for the purpose of protecting the property of the owner or occupant or some other person. One possibility is where the police reasonably believe that the premises have recently been or are being burglarized. Thus, police entry is justified on the basis of a breaking and entering call to police plus the discovery of an open door which bore evidence of being pried open, of activation of a burglar alarm at those premises, of the observation of lights on within and strange cars parked about a house whose occupants a neighbor says are on vacation, and of a neighbor's report that strangers were seen coming from a cabin in an area where many cabins had recently been broken into.

2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 6.6(b), at 706–07 (2d ed. 1987) (footnotes omitted).

■ In the case *sub judice*, the Court of Special Appeals correctly noted that courts of other jurisdictions that have addressed this issue are in general agreement with the view that where police have probable cause to believe that a burglary has been committed recently or is in progress, a warrantless search of the residence to see if the intruder is within, or to ascertain whether there are people in need of assistance, does not offend the Fourth Amendment. *Carroll,* 97 Md.App. at 238, 629 A.2d at 1249. We hold that when law enforcement officers have probable cause to believe that a burglary is either in progress or recently has been committed, the exigencies of the situation permit the officers to enter the premises without a warrant to search for intruders and to protect an occupant's property. Just as a burning building creates an exigency that justifies a warrantless entry by fire officials to fight the blaze, a recent or ongoing burglary may create an exigency that justifies a warrantless entry by law enforcement officers to search for intruders and to protect property. Law enforcement officers encountering such circumstances should not be forced to retreat to obtain a search warrant and to allow burglars to complete their crimes undisturbed. *Singer,* 687 F.2d at 1144; *see also Johnson,* 9 F.3d at 510.

■ We are mindful that the responsibility of the police to investigate burglaries must be balanced against the serious invasions of privacy such entries and searches entail. *See Johnson,* 9 F.3d at 510; *Erickson,* 991 F.2d at 533. We further recognize that courts must "be vigilant to ensure that the rationale of protecting private property is not employed as a subterfuge to seek out evidence of criminal conduct." *People v. Gardner,* 121 Ill.App.3d 464, 76 Ill.Dec. 761, 766, 459 N.E.2d 676, 681 (1984); *see also Crabtree,* 655 S.W.2d at 179 (defendant entitled to show police created mock burglary as excuse to make unauthorized entry and search of his busi-

ness); 2 Wayne R. LaFave, *supra*, § 6.6(b), at 708. The common thread running through the cases in which the courts have found exigent circumstances to exist is that the law enforcement officers were not using the situation as an excuse to conduct an unlawful search for evidence. *See Nilson*, 272 Md. at 190–91, 321 A.2d at 307 ("[T]he arrests were not a mere pretext to conduct a warrantless search of the premises for the fruits and instrumentalities of the crime."). The entry cannot be made on the pretext to search for contraband or illegal activity rather than to look for suspects and to preserve an occupant's property. *Bakke*, 723 P.2d at 539. Furthermore, the scope of the limited warrantless intrusion we condone today must not exceed that justified by the exigencies presented. *Johnson*, 9 F.3d at 510; *see also Zander*, 591 P.2d at 659; 2 Wayne R. LaFave, *supra*, § 6.6(a), at 705–06. Thus, when acting on the reasonable belief that a burglary is in progress or has recently been committed, law enforcement officers may not deviate from the original purposes of their search. *Berow*, 688 P.2d at 1127–28.

## III.

In determining whether the Carroll County Deputy Sheriffs acted under circumstances sufficient to justify the initial warrantless search of Carroll's residence, we must consider what they reasonably believed at the time of their warrantless entry, *Ker*, 374 U.S. at 40 n. 12, 83 S.Ct. at 1633 n. 12, 10 L.Ed.2d at 742 n. 12; *Johnson v. United States*, 333 U.S. 10, 17, 68 S.Ct. 367, 370–71, 92 L.Ed. 436, 442 (1948); *McMillian*, 325 Md. at 282, 600 A.2d at 435, and specifically whether they had probable cause to believe that there had been a recent forcible entry into Carroll's apartment or to believe an intruder was still on the premises. In *Doering v. State*, 313 Md. 384, 545 A.2d 1281 (1988), we stated that "probable cause is a nontechnical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion." *Id.* at 403, 545 A.2d at 1290. We further recognized:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

\* \* \* \* \* \*

Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating . . . often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice."

*Id.* at 403, 545 A.2d at 1290–91 (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949)).

## A.

When the question before us is whether a constitutional right has been violated, we are required to make our own independent constitutional appraisal by applying the law to the facts of the particular case. *Riddick v. State*, 319 Md. 180, 183, 571 A.2d 1239, 1240 (1990). Carroll contends that probable cause did not exist for the deputy sheriffs to believe that a burglary had occurred or was in progress and that, at best, the facts of this case give rise to a suspicion that a misdemeanor housebreaking had occurred. At oral argument, Carroll argued that the deputy sheriffs could not assume that a breaking had occurred at nighttime or had occurred with an intent to steal so as to elevate the apparent crime from a misdemeanor to a felony. The State argues that the police were clearly presented with circumstances evidencing a "bur-

glary-type"[3] crime under Maryland law. Alternatively, the State argues that whether the offense was a misdemeanor or a felony is irrelevant; the sheriffs had probable cause to believe that there was a recent breaking into Carroll's apartment and they were entitled to investigate. We agree with the State. The characterization of the offense as a misdemeanor or a felony has no bearing on whether the deputy sheriffs could enter the apartment. In either case, the breaking of the house under those circumstances was a criminal offense giving the deputy sheriffs reasonable grounds to believe that the breaking was probably a common law burglary or statutory housebreaking.

The determination of whether exigent circumstances exist must be made on a case by case basis and is determined by the individual facts of each case. We are in agreement with the Court of Special Appeals which held that the deputies' entry into Carroll's apartment was reasonable under the particular facts of this case. *Carroll,* 97 Md.App. at 242, 629 A.2d at 1251. As Judge Bishop wrote:

> It is clear that the deputies had a reasonable basis, approximating probable cause, to believe that Carroll's apartment either had recently been or was in the process of being broken into. Both the screen door and the wooden door were open. One of the four panes of glass in the wooden door was missing. Penn advised Gonder that the occupant of the apartment was not home, that he was not expected back until the following day or the day after, and that the apartment was secured. These facts establish the probability that someone forcibly entered the apartment.

*Carroll,* 97 Md.App. at 241, 629 A.2d at 1251.

In the sworn application for the search warrant, Deputy First Class Gonder stated that it appeared that someone made

---

3. At the time of this offense, unauthorized entry into a dwelling was proscribed as common law burglary, breaking a dwelling with intent to steal or commit a felony, and breaking and entering a dwelling house of another. Maryland Code (1957, 1992 Rcpl.Vol.) Art. 27, §§ 29, 30 & 31A. Effective October 1, 1994, all unauthorized entries into dwellings are termed burglary. *See* Ch. 712 of the Acts of 1994.

forced entry into the apartment. Whether the deputy sheriffs entered under the subjective belief that Carroll's apartment had been broken into by Joe Hudson or by some other intruder is of no consequence to the outcome of this case.[4] In either situation, the deputy sheriffs reasonably believed that a forced entry into Carroll's apartment was recent and that an intruder may still have been present.

We find the facts in the cases in which courts have declined to find exigent circumstances to be distinguishable. In *United States v. Selberg, supra,* a neighbor called the police to report a burglary at the defendant's home, telling them that he saw the defendant drive away from his home the day before with the front door to the home open. 630 F.2d at 1294. Unlike the case *sub judice,* the officer in *Selberg:*

> had no reason to believe a crime had been or was being committed and that entry was necessary to protect Selberg's property. He knew [the neighbor] saw Selberg leave with the door open. No one had since reported any suspicious activity, and the trailer showed no signs of any criminal activity.

*Id.* at 1296. Similarly, in *State v. Bramson, supra,* the Court of Appeals of Oregon held that the police did not have probable cause to believe that a burglary had been or was being committed because the open door to the defendant's residence "was at least as consistent with the occupants' neglect as it was with a burglary." 765 P.2d at 826.

Carroll contends that the facts in the cases from other jurisdictions upholding warrantless entries under the exigent circumstances of a recent or ongoing burglary "go far beyond" this case with respect to both probable cause and exigency. We disagree. Although this case did not involve a call from a person reporting a breaking into Carroll's residence, it did involve an emergency presented by the search for an escaped

---

4. The State aptly notes that because escapees generally need money, supplies, and places to hide, it would, however, have been reasonable for the deputy sheriffs to believe that Joe Hudson may have broken into Carroll's apartment.

convict known to be in the immediate location within the past few hours, a broken window pane, a condition which appeared to the deputy to indicate a forced entry into the apartment, an open door leaving the premises unsecured, knowledge that the occupant of the residence was away for the next day or two, and a representation by an immediate neighbor that the residence was left in a secure condition. The discovery of this unlocked residence under these circumstances amounts to a compelling urgency to make a prompt inspection of the apartment. The presence or absence of suspects within Carroll's apartment could not be ascertained without entering the premises. *See Bakke,* 723 P.2d at 538. Because it was possible that the burglar was still inside, it was not reasonable to merely shut the door or to attempt to visualize any activity through the doors without entering.

Any of the facts discussed above, taken in isolation, may well have been an insufficient foundation for probable cause to believe that there had been a recent forcible entry into Carroll's apartment. In light of the totality of these facts, however, we hold that the deputy sheriffs had the requisite probable cause and exigency to conduct the initial warrantless entry.

### B.

A warrantless search must be "strictly circumscribed by the exigencies which justify its initiation." *Terry v. Ohio,* 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889, 908 (1968). Here, the deputy sheriffs' actions upon entering the apartment were consistent with their purpose in entering. They announced their presence and, while checking to see whether anyone was inside, they observed the marijuana plants. They left the evidence undisturbed, secured the apartment and departed to make application for a search and seizure warrant. The entry was not conducted with an eye toward Carroll's prosecution, but rather to investigate a forced entry and to secure the premises against possible damage or future entry. As the Court of Special Appeals noted: "[T]here is nothing in the record to suggest that the deputies entered the apartment

for any reason other than to investigate the suspicious condition. Indeed, the deputies had no reason to suspect that they would find contraband within the apartment." *Carroll,* 97 Md.App. at 241, 629 A.2d at 1251. Furthermore, the record does not indicate and Carroll does not argue that the investigation within the apartment exceeded a search reasonably calculated to disclose an intruder's presence. Their actions within were clearly circumscribed by the exigencies that justified the intrusion.

■ Based on what they saw in the apartment, the deputies sought and obtained a search and seizure warrant. Only then did they seize the evidence of controlled dangerous substances and paraphernalia. The fact that this search warrant was based upon observations from the initial warrantless entry does not render the search and seizure pursuant to the warrant unlawful. Because they were lawfully in the apartment pursuant to the exigent circumstances exception to the warrant requirement, their observations were proper grounds for a search warrant under the plain view doctrine. *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *Coolidge,* 403 U.S. at 464–73, 91 S.Ct. at 2037–42, 29 L.Ed.2d at 581–87.

Having found the initial entry and search of Carroll's apartment reasonable under the Fourth Amendment, we hold that the search and seizure warrant subsequently issued to the Carroll County Sheriff's Department was valid and the trial court improperly granted Carroll's motion to suppress.[5] Accordingly, we affirm the judgment of the Court of Special Appeals.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. CASE REMANDED TO THAT COURT WITH THE DIRECTION TO REMAND THE CASE TO

---

5. In light of this holding, we need not address the State's argument with respect to the application of the "community caretaking function" exception to the warrant requirement to the facts of this case or the arguments with respect to the existence of an independent source for probable cause and the inevitable discovery doctrine.

THE CIRCUIT COURT FOR CARROLL COUNTY FOR FURTHER PROCEEDINGS. COSTS IN THE COURT OF SPECIAL APPEALS AND IN THIS COURT TO BE PAID BY PETITIONER.

BELL, Judge, dissenting in which ELDRIDGE, Judge joins.

It is well settled that the Fourth Amendment of the United States Constitution is not infringed when a warrantless search and seizure is conducted pursuant to exigent circumstances. *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486, 498 (1978); *United States v. Santana,* 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409–10, 49 L.Ed.2d 300, 305–06 (1976); *Warden v. Hayden,* 387 U.S. 294, 298–300, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782, 787–88 (1967); *Schmerber v. California,* 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908, 919–20 (1966); *Ker v. California,* 374 U.S. 23, 37–41, 83 S.Ct. 1623, 1632–34, 10 L.Ed.2d 726, 740–42 (1963); *Oken v. State,* 327 Md. 628, 646, 612 A.2d 258, 267 (1992); *McMillian v. State,* 325 Md. 272, 281, 600 A.2d 430, 434 (1992); *Stackhouse v. State,* 298 Md. 203, 211–12, 468 A.2d 333, 338 (1983), and cases cited therein. The exception is, however, a narrow one since "exigency implies urgency, immediacy, and compelling need." *Stackhouse,* 298 Md. at 212, 468 A.2d at 338. The Supreme Court has held that "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York,* 445 U.S. 573, 585, 586, 100 S.Ct. 1371, 1379, 1380, 63 L.Ed.2d 639, 651 (1980) (quoting *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752, 764 (1972)). Accordingly, "[b]efore agents of government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin,* 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732, 743 (1984). The burden of establishing exigent circumstances, one of the few carefully delineated exceptions

to the warrant requirement, *United States v. United States District Court,* 407 U.S. at 318, 92 S.Ct. at 2137, 32 L.Ed.2d at 767, is a heavy one. In such circumstances, the police bear the burden "when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh,* 466 U.S. at 749, 104 S.Ct. at 2097, 80 L.Ed.2d at 743. It is also clear that "no exigency is created simply because there is probable cause to believe that a serious crime has been committed." *Id.* at 753, 104 S.Ct. at 2099, 80 L.Ed.2d at 745.

The majority's statement and explanation of the exigent circumstances exception are consistent with these principles, as are our cases applying it. *See,* in addition to cases hereinbefore cited, *Lebedun v. State,* 283 Md. 257, 278, 390 A.2d 64, 73 (1978); *Nilson v. State,* 272 Md. 179, 191, 321 A.2d 301, 307 (1974); *Davis v. State,* 236 Md. 389, 395, 204 A.2d 76, 80 (1964), *cert. denied,* 380 U.S. 966, 85 S.Ct. 1113, 14 L.Ed.2d 156 (1965). Therefore, up to this point, the majority and I agree.

Nor do I disagree with most of the cases cited by the majority addressing whether law enforcement officers may enter a home without a warrant for the purpose of investigating a probable burglary. Although their stated rationale is to protect property, *see* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (§ 6.6(b) at 706 (2nd Ed.1987), for the most part, the cases indicate that entry is permitted to determine whether the burglary is ongoing. *United States v. Johnson,* 9 F.3d 506 (6th Cir.1993) (upon receipt of a report of a burglary in progress—individuals crawling through a window—the police arrived to find the doors locked, a kitchen window with a broken pane, and people inside the premises, one of whom lied as to the number actually in the premises. Held, entry was appropriate); *Reardon v. Wroan,* 811 F.2d 1025 (7th Cir.1987) (responding to report of burglary in progress at a fraternity house when students were on break, on arrival, police found single car in driveway and the door to the fraternity house unlocked); *United States v. Valles–Valencia,* 811 F.2d 1232 (9th Cir.1987), *amended on other grounds,* 823 F.2d 381 (9th Cir.1987) (police

suspected a burglary in progress on the basis of report of strangers being parked in front of a house, the owners of which were on vacation, the strangers could not explain their presence and a front window showed signs of being pried open, along with the smell of marijuana); *United States v. Singer,* 687 F.2d 1135 (8th Cir.1982), *adopted in relevant part,* 710 F.2d 431 (8th Cir.1983) (circumstances indicated burglary in progress); *Mann v. Cannon,* 731 F.2d 54 (1st Cir.1984) (report of juveniles breaking into house); *United States v. Estese,* 479 F.2d 1273 (6th Cir.1973) (report of breaking and entering plus, upon arrival, observing open door with pry marks); *Carter v. State,* 405 So.2d 957 (Ala.Cr.App.) *cert. denied,* 405 So.2d 962 (Ala.1981) (where door to adjoining apartment where burglary-rape had just occurred was open, with key in the lock and vice type pliers were found nearby and there was no response to police knock, entry to investigate possible burglary permitted); *People v. Duncan,* 42 Cal.3d 91, 720 P.2d 2 (1986) (report burglary in progress or had just occurred; found doors to the premises locked but back window open and beneath that window was a box containing a television set and other items; entry to determine whether burglars were still inside permitted); *People v. Unruh,* 713 P.2d 370 (Colo.), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986) (car observed carrying safe and suspect confessed to burglary in the area, police permitted to enter to check the premises where front door was open and door jam splintered); *People v. Berow,* 688 P.2d 1123 (Colo. 1984) (broken locks, report of movement inside the apartment prompted burglary report, while at the scene, landlord told the officer that she thought she had just seen movement inside the apartment, entry permitted); *State v. Mann,* 440 So.2d 406 (Fla.App.1983) (where police set up surveillance as a result of burglary in apartment complex, screen bent and door jams scarred and door opened with slight pressure was sufficient evidence to permit officer to enter to check for burglary in progress); *Commonwealth v. Fiore,* 9 Mass.App.Ct. 618, 403 N.E.2d 953 *cert. denied,* 449 U.S. 938, 101 S.Ct. 336, 66 L.Ed.2d 160 (1980) (report of housebreaking and discovery of

cottage with outside door torn off and inner door ajar); *In Re Forfeiture of $176,598,* 443 Mich. 261, 505 N.W.2d 201 (1993) (activated residential security alarm, together with evidence of forced entry sufficient to permit exigent circumstances entry); *State v. Metz,* 422 N.W.2d 754 (Minn.App.1988) (report of a burglary permitted entry to investigate); *State ex rel. Zander v. District Court,* 180 Mont. 548, 591 P.2d 656 (1979) (report of burglary, door, reportedly kept locked, found unlocked when no one was reported to be at home; "the officers at the time of entry were engaged in protecting the Zander property. This included determining whether any burglars were hiding inside the house. A prudent officer was warranted in believing that a felony had been attempted or committed and in concluding prompt entry into the home was necessary to protect the property and determine whether the suspect was hiding in the house."); *State v. Crabtree,* 655 S.W.2d 173 (Tenn.Crim.App. 1983) (response to a burglar alarm; entry justified to determine if a burglar was in the building); *State v. Bakke,* 44 Wash.App. 830, 723 P.2d 534 (1986), *cert. denied,* 107 Wash.2d 1033 (1987). *See also United States v. Dart,* 747 F.2d 263 (4th Cir.1984) (police appropriately entered Dart storage warehouse in response to break-in report and evidence of a break-in, *i.e.* locks being sawed off on several units); *B.P.O.E. No. 576 Elks Club v. State,* 413 N.E.2d 660 (Ind.App.1980) (response to a burglar alarm); *United States v. Pichany,* 687 F.2d 204 (7th Cir.1982) (entry not permitted when call indicated that the burglary was no longer in progress).[1]

---

1. A rather clear case of entry to protect the property of another, and perhaps of the occupant of the premises entered, is *United States v. Boyd,* 407 F.Supp. 693 (S.D.N.Y.1976). In that case, water was leaking into a third floor apartment. When the landlord discovered that the leak did not originate in the fourth floor apartment, which was vacant, and that the water was running in the apartment above it, it was appropriate, the court held, to enter that apartment, whose occupant did not respond to the knock, to avoid a dangerous condition, *i.e.,* collapse of ceilings and walls.

   If the police enter premises to abort a burglary, it is at least arguable that they are doing so to protect the owner's property—avoiding its theft is a means of protecting property. It is rather difficult to understand how property is being protected by an entry after the burglary has

These cases are consistent with the prerequisite for an exigent circumstance entry: that there be probable cause, *i.e.* "the probability of substantial chance of criminal activity, not an actual showing of such activity." *United States v. Ogbuh,* 982 F.2d 1000, 1002 (6th Cir.1993). In the context of the exigent circumstances exception, in defining probable cause "two principles must be kept in mind[:] (1) Since the doctrine is an exception to the ordinary Fourth Amendment require-ment of a warrant for entry into a home, the burden of proof is on the state to show that the warrantless entry fell within the exception. * * * (2) An objective standard as to the reasonableness of the officer's belief must be applied." *Root v. Gauper,* 438 F.2d 361, 364 (8th Cir.1971). To meet the objective standard, a police officer must "be able to point to specific and articulable facts which, taken together with ra-tional inference from those facts, reasonably warrant that intrusion." *State v. Sanders,* 8 Wash.App. 306, 506 P.2d 892, 895 (1973).

Thus, inferences appropriately may be drawn from the facts and circumstances surrounding the break-in and known to the police, *e.g.,* from the fact of a call of a break-in and the observation of signs of forced entry or the fruits stacked beneath the point of entry, it is logical to infer that the burglary is ongoing. On the other hand, speculation is not, and should not, be permitted. When a burglary occurred cannot be inferred, without more, from the fact that a burgla-ry *may* have been committed. Thus, evidence of a burglary, *i.e.* a broken latch or a broken window pane, does not provide probable cause for the belief that a burglary just occurred or

---

been completed. In that circumstance, the property owner's remaining property is protected by securing the premises. *See People v. Parra,* 30 Cal.App.3d 729, 106 Cal.Rptr. 531 (1973) in which the court para-phrased § 197 of the Restatement (Second) of Torts (1966) to the effect that "one is privileged to enter and remain on land in the possession of another if it reasonably appears to be necessary to prevent serious harm to the land or chattels of the other party, unless the actor has reason to know that one for whose benefit he enters is unwilling that he shall take such action." *Id.* 106 Cal.Rptr. at 533.

that it is ongoing. Such a conclusion is nothing more than speculation.

Of course, when the premises burglarized is a dwelling and there is no information as to the whereabouts of the occupant, because the warrantless entry is permitted to aid persons in need of assistance, 2 W. LaFave, *supra,* § 6.6(a) at 697, an inference that the occupant may be in the premises and in need of assistance is a bit more compelling. When, however, the information available to the police is that the occupant is not present, then that basis for inference no longer exists.

In the case *sub judice*, there is no reasonable basis for inferring that the burglary of the petitioner's premises had recently occurred or was in progress. There is nothing in the record indicating when the petitioner left his home; all that is known is that he was expected back either the next day or the following day. Nor is there any evidence that his neighbor heard any noises or anything else which would somehow serve to pinpoint the time of the break-in. The police went to the premises looking for an escapee from a work release program. That person, the petitioner's neighbor said, left her house the preceding evening at about 11 o'clock. While it is not clear at what time the police arrived, it was certainly in the morning of the next day.[2]

---

**2.** This Court may only consider the evidence produced at the motions hearing, *Lee v. State,* 311 Md. 642, 648, 537 A.2d 235, 237 (1988). However, in a supplemental report prepared by Officer J.W. Prise, not offered into evidence at the motions hearing, it is clearly stated that the officers arrived at "approximately 1230 hrs" and entered the downstairs apartment shortly thereafter "[b]elieving that Hudson may have broken into and still may be in the apartment". Carroll County Sheriff's Department Supplemental Report, CIR X–18 01933, 7/31/92. As a factual matter, it is apparent that the officers did not believe that a burglary was in progress or had recently occurred. More importantly, the "hot pursuit" exception to the warrant requirement cannot be established under these circumstances. Penn told them that she had seen Hudson at 11:00 p.m. the night before. No exigency is present where the officers arrive 13½ hours after the sighting of a suspect. I believe it unreasonable, and speculative at best, for the officers to believe that Hudson, aware of his escape status, would have broken into the downstairs apartment and waited 13½ hours for the police to arrive.

It is of some interest that the police officers recognized that not every break-in or open door is an invitation for the police to enter and investigate in order to "protect" the property of the burglary victim. They were aware that additional information was needed. They sought that information from the petitioner's neighbor. What that neighbor told them or, perhaps, was unable to tell them—if, for example, she could not account for the petitioner's whereabouts—may have supplied the reasonable basis for entry. Here, it did not. And, lest ambiguity on the issue persist, the police may not enter the premises and later plead ignorance of the facts, though a source be available to acquire them; the police must seek out available information and assess it for adequacy before entry is made.

The petitioner's neighbor told the police that the petitioner was not present and was not expected back for at least a day. From this, we know that the only basis upon which the police could legitimately have entered the premises was to investigate an ongoing burglary, i.e., to determine whether the burglar was still on the premises. Nobody being at home, there was no reason to believe that anyone was in need of assistance.

It seems likely that the police were concerned that the escapee was in the premises; however, there is no reason to suppose that, even if it is a legitimate inference that he broke into the premises, that he remained on the premises.[3] Indeed, given the lack of a temporal context, it is difficult to conceive of what legitimate inferences could be drawn which would have permitted entry.

There being no basis for a reasonable inference as to when the burglary occurred and, hence, no basis for entering the

---

3. Of course if the purpose for entering the premises was to discover the escapee, there would seem to be another set of problems. First, there would be no way of establishing the exigency of hot pursuit, not to mention of establishing that the escapee was indeed in the premises. The only basis for any conclusion in that regard would be simply pure speculation.

premises to look for a burglar, the State can only proffer that this case presents an emergency occasioned by the search for an escaped convict who had been in the immediate vicinity of the premises or that the police were attempting to protect the property of the petitioner, and, perhaps, to determine whether anything was missing. As to the latter, there is no basis for supposing that the police could determine whether anything was stolen, not knowing what was in the premises in the first place. Moreover, assuming that some property was taken, once the property had been stolen, it was too late to protect it. The only thing that could have been done in that regard was to secure the premises, as the police did when they went to get the warrant, so that no additional property would be taken. That could have been accomplished without entering the premises.

As to the former, curiously, the majority does not address, although it earlier recognized that exigency required the establishment of an ongoing burglary or a recently committed one, *see* Majority op. at 734, why the police believed that it was possible that the burglar was still inside or, in any event, why entry was required. It is, of course, true as the majority points out, Majority op. at 739, that the presence or absence of suspects within the subject premises could not be ascertained without entering the premises, but until there is probable cause, not just speculation, to believe that suspects are on the premises, there simply is no basis for the police to enter the premises. Nor does the totality of the facts the majority enumerates supply the bridge from burglary at some time to burglary in progress or hot pursuit of an escapee.

As I see it, the police acted illegally, there being no exigency justifying their entry into the petitioner's premises.

If, as the State argues, and the majority accepts, the facts of this case constitute a sufficient basis for the establishment of exigent circumstances, then the urgency or emergency nature of exigency has been completely written out of the exception. In other words, the exception is now the rule. An exigency exists and hence, entry into a home is permissible, whenever a

police officer *can surmise* that there probably has been a break-in at those premises. The officer need not show or articulate a basis for believing it to have occurred recently, not to mention for believing it to be in progress.

Therefore, the Circuit Court for Carroll County was correct in suppressing the fruits of the State's illegal entry. I would reverse the judgment of the Court of Special Appeals and reinstate the judgment of the Circuit Court for Carroll County.

ELDRIDGE, J., joins in the views expressed herein.